**CLIFTON PRODUCTS, INC.,**
v.
**UNITED STATES.**
No. 359–57.

United States Court of Claims.
Jan. 14, 1959.

Charles R. Richey, Washington, D. C., for plaintiff.

Norman Hyman, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. John F. Wolf, Washington, D. C., was on the brief.

JONES, Chief Judge.

The plaintiff has brought this suit to recover damages alleged to have

been caused by the defendant's breach of an implied covenant in two lease contracts with the defendant.

The plaintiff's petition, with three claims, was filed in this court on July 31, 1957. The defendant has filed a motion to dismiss Claim One of the petition on the ground that that claim is barred by the statute of limitations,[1] and that it fails to state a cause of action.

As part of a national program to encourage and assist in the production of beryllium, the United States, acting through its agency, the Defense Corporation, in 1943 entered into contracts with the plaintiff by which the Corporation agreed to lease to the plaintiff certain property, adjacent to the plaintiff's property, in Painesville, Ohio, for the expansions of the plaintiff's beryllium-producing facilities. The facilities established were known as "Plancors 1716 and 1911."

Under the terms of the lease covering Plancor 1716, the plaintiff agreed to pay to the United States a percentage of its sales during each year of the lease as a rental for the defendant's interest in the plant. The lease further provided that when the rental payments equaled the defendant's initial investment, plus interest, the plaintiff would then be required to pay no further rental and would thus acquire Plancor 1716 free and clear of any further obligation.

Under the lease for Plancor 1911, it was stated that when the rental payments equaled the defendant's initial investment, plus interest, the plaintiff's rentals would thereafter be reduced by approximately 83.5 percent.

The plaintiff asserts that the defendant breached the rental arrangements in its leases and an implied covenant contained in the leases to cooperate and not to interfere with or do anything which would prevent the plaintiff from realizing the natural and anticipated benefits therefrom when, in 1949, the Atomic Energy Commission, a separate and distinct Government agency from the Defense Corporation, established its own plan in Luckey, Ohio, to produce beryllium. The establishment of the Luckey plant, the plaintiff maintains, destroyed the basic market for the plaintiff's product and prevented it from recouping its original investment in the property known as Plancors 1716 and 1911.

The plaintiff further contends that from the period beginning about November 1945, through June 1955, the parties carried on extensive negotiations regarding the plaintiff's desire to purchase the defendant's interest in Plancors 1716 and 1911. The plaintiff alleges that during that period the parties agreed to defer the question of the plaintiff's demands for payment of the aforesaid claim until the conclusion of their negotiations, that the ultimate price to be paid by the plaintiff would include provision for the breach of the implied covenant claim. The plaintiff further asserts that on or about March 23, 1956, both parties agreed to an extension of the plaintiff's occupancy of both Plancors 1716 and 1911 upon the express understanding that such an extension was without prejudice to any claim that either party might have against the other.

The defendant has moved to dismiss Claim One of the plaintiff's petition on the ground that it is barred by the statute of limitations or in the alternative that it fails to state a cause of action. We need not reach the alternative ground since we have reached the conclusion that Claim One of plaintiff's petition is barred by the statute of limitations.

■ The plaintiff urges that the statute of limitations was suspended during the period of negotiations with regard to the plaintiff's desire to purchase Plancors 1716 and 1911. The negotiations involved, *inter alia,* consideration of the alleged breach of covenant. To substantiate its contention, the plaintiff relies on Rosario v. United States, 1939, 70 App.D.C. 323, 106 F.2d 844, and De Pusana v. United States, D.C., 164 F.Supp.

---

**1.** 62 Stat. 976, 28 U.S.C. § 2501.

672. Neither case supports the plaintiff's position. In the Rosario case the court held that the statute of limitations began to run when a final order denying the claim was rendered by an administrative body. The De Pusana case held that until there had been a final disposition of a pending claim in the Veterans Administration, the statute of limitations was suspended. We have consistently held that if the act under which a suit is brought requires an administrative determination as a prerequisite to a suit, the statute of limitations is tolled during the pendency of the administrative proceedings. Thomas v. United States, 1953, 125 Ct.Cl. 76; Ball v. United States, 1956, 137 F.Supp. 740, 133 Ct. Cl. 841; Levine v. United States, 1956, 137 F.Supp. 955, 133 Ct.Cl. 774; Odell v. United States, 1956, 135 F.Supp. 539, 134 Ct.Cl. 634.

We are not dealing here with a claim which has been brought before an administrative body thus allotting time for the suspension of the statute of limitations. The plaintiff and the defendant were immediate parties to the leases negotiating a settlement. The negotiations were permissive and the mere pendency of such negotiations for the adjustment of a controversy does not toll the statute of limitations. Schwing Lumber & Shingle Co. v. Peterman, 140 La. 71, 72 So. 812. To hold otherwise would invite unreasonable computations regarding sporadic negotiations and open the door of the courts to claims made stale by extensive negotiations over a long period of time.

The plaintiff had not sought an administrative remedy, nor was it required to do so. From 1949, when the alleged breach occurred, to 1955, the plaintiff could have filed a petition in this court notwithstanding the plaintiff's assertion that to do so would involve resorting to "piecemeal or to premature litigation", citing United States v. Dickinson, 1947, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789. The plaintiff's use of the language in the Dickinson case is misleading. The Court discussed premature litigation especially in reference to filing a suit when there is uncertainty as to ultimate damages involved. In the Dickinson case, the Government took part of the plaintiff's land by flooding. At the time of the initiation of the suit the amount of ultimate damage to the plaintiff could not be determined.

The Court, 331 U.S. at page 749, 67 S. Ct. at page 1385, used the following language:

"An owner of land flooded by the Government would not unnaturally postpone bringing a suit against the Government for the flooding until the consequences of inundation have so manifested themselves that a final account may be struck."

The plaintiff states that if the statute of limitations had run on its cause of action in 1955, then it began running anew in March 1956 when the parties agreed to extend the plaintiff's occupancy. The plaintiff cites Marr v. United States, 1952, 106 F.Supp. 204, 123 Ct.Cl. 474, as its support. That case held that where there had been an accord and settlement of a claim for overtime pay, the statute of limitations began to run, not from the date of the claim which became merged in the settlement, but from the date of the settlement. The facts in the instant case do not indicate that there was an accord and settlement reached in the March 1956 extension. The plaintiff's cause of action accrued in 1949 and expired in 1955.

The plaintiff's petition is dismissed as to Claim One.

It is so ordered.

REED, Justice (Ret.), sitting by designation, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.