# CROWN COAT FRONT CO., INC. *v.* UNITED STATES.

No. 371.   Argued February 13–14, 1967.—Decided April 10, 1967.

*Edwin J. McDermott* argued the cause and filed a brief for petitioner.

*David L. Rose* argued the cause for the United States. With him on the brief were *Solicitor General Marshall, Assistant Attorney General Sanders* and *Richard A. Posner.*

*Thomas Kiernan* filed a brief, as *amicus curiae.*

MR. JUSTICE WHITE delivered the opinion of the Court.

The standard disputes clause in government contracts requires that "any dispute concerning a question of fact arising under this contract," not disposed of by agreement, shall be decided by the contracting officer, with the right of appeal within 30 days to the department head or his representative (normally a board of contract appeals) whose decision shall be final "unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith." [1] The "arising under" claims

---

[1] The disputes clause contained in the contract between petitioner and the Government provides:

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive; provided that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an oppor-

subject to final administrative determination are those claims asserted under other clauses of the contract calling for equitable adjustment of the purchase price or extensions of time upon the occurrence of certain events.[2] One of these clauses is the so-called "changes" clause which permits the contracting officer to make changes within the scope of the contract, provides that if any change causes an increase or decrease in the cost of, or the time required for the performance of, the work, "an equitable adjustment shall be made in the contract price or delivery schedule," and states that failure to agree upon an adjustment shall be a question of fact within the meaning of the disputes clause.[3]

---

tunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

For the disputes clause presently in use, see 32 CFR § 597.103–12.

[2] Claims not arising under those other clauses of the contract calling for equitable adjustment and therefore not within the disputes clause will sometimes be referred to herein as "breach" claims. See *United States* v. *Utah Construction Co.*, 384 U. S. 394, 403–418.

[3] The record in this case contains only excerpts from the changes clause of the contract at issue here. The standardized version of the changes clause for fixed-price supply contracts provides, in its entirety, that:

"The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of this contract, in any one or more of the following: (i) Drawings, designs, or specifications, where the supplies to be furnished are to be specially manufactured for the Government in accordance therewith; (ii) method of shipment or packing; and (iii) place of delivery. If any such change causes an increase or decrease in the cost of, or the time required for the performance of any part of the work under this contract, whether changed or not changed by any such order, an equitable adjustment shall be made in the contract price or delivery schedule, or both, and the contract shall be modified in writing accordingly. Any claim by the Contractor for adjustment under this clause must be asserted within 30 days from

This case involves a claim for an equitable adjustment, asserted under the changes clause and rejected by the contracting officer and the Armed Services Board of Contract Appeals. The contractor brought suit in the District Court under 28 U. S. C. § 1346[4] alleging that the decision of the Board was arbitrary, capricious and not supported by substantial evidence. The District Court dismissed the case as barred by 28 U. S. C. § 2401 (a) which provides that "Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues . . . ." The principal question here is whether the "right of action" with respect to a claim within the disputes clause first accrues at the time of the final administrative action or at an earlier date.

The facts are quite simple. On May 14, 1956, petitioner contracted with the United States to furnish a specified number of canteen covers which were to be

___

the date of receipt by the Contractor of the notification of change, provided, however, that the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract. Where the cost of property made obsolete or excess as result of a change is included in the Contractor's claim for adjustment, the Contracting Officer shall have the right to prescribe the manner of disposition of such property. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled 'Disputes.' However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed." 32 CFR § 7.103–2.

The excerpted version of the changes clause in this case appears in the unreported opinion of the District Court, and it seems substantially identical to the full clause quoted above.

[4] Section 1346 in relevant part provides that the district courts shall have original jurisdiction, concurrent with the Court of Claims, of ". . . (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States . . . ."

lined with mildew-resistant felt of certain specifications. The Government, which was authorized to inspect materials to be used under the contract, tested and rejected certain samples of felt purchased by petitioner because they allegedly did not contain the contract quantities of mildew inhibitors. Petitioner agreed to a price reduction, however, and was permitted to complete the contract. Final delivery, originally scheduled for October 11, 1956, was made on December 14, 1956. Allegedly, in March 1959, petitioner first discovered the nature of the tests which the United States had performed on the felt. Claiming that the use of such tests was not within the contemplation of the contract and constituted a change in contract specifications, petitioner filed a claim with the contracting officer in October 1961, demanding an equitable adjustment in the contract price in the form of a refund of the price reduction and compensation for increased costs occasioned by substantial delay resulting from the Government's rejection of the felt samples. The contracting officer denied the claim. On February 28, 1963, the Board of Contract Appeals affirmed the contracting officer's decision. On July 31, 1963, more than six years after petitioner had completed performance of the contract, petitioner brought suit in the District Court alleging that the Board's decision was capricious, arbitrary and not supported by substantial evidence and that it was entitled to an equitable adjustment as provided in the contract. The United States, among other things, denied that the claim was within the disputes clause and asserted that the suit was time-barred by § 2401 (a). Without deciding whether the claim arose under the contract within the meaning of the disputes clause, the District Court dismissed the suit as barred by the statute of limitations. The Court of Appeals, sitting en banc, affirmed in a five-to-four decision. 363 F. 2d 407. Relying on McMahon v. United States, 342 U. S. 25, and its own

decision in *States Marine Corp. of Delaware* v. *United States,* 283 F. 2d 776, which arose under the Suits in Admiralty Act, the majority below concluded that the right of action first accrued no later than December 14, 1956, the date of the final delivery of the disputed canteen covers, and was therefore time-barred by § 2401 (a). The court disagreed with the decision of the Court of Appeals for the Third Circuit in *Northern Metal Co.* v. *United States,* 350 F. 2d 833, which, like *States Marine, supra,* involved the Suits in Admiralty Act. 41 Stat. 525, as amended. The Court of Appeals for the Third Circuit had agreed with *States Marine* as to when the time bar begins to run but had held that the statute was tolled during the pendency of the administrative proceedings. Because of this apparent conflict, we granted certiorari, 385 U. S. 811. We reverse.

Since the decision below, the Court of Claims has decided *Nager Electric Co., Inc.* v. *United States,* 177 Ct. Cl. 234, 368 F. 2d 847, a unanimous decision by that court supported by an exhaustive opinion by Judge Davis dealing with the application of the "first accrual" language of 28 U. S. C. § 2501 [5] to both breach and disputes clause claims under the typical government contract. The conclusion of the Court of Claims was that it would adhere to what it considered to be its long-standing rule: (1) when administrative proceedings with respect to a contractor's claim subject to the disputes clause extend beyond the completion of the contract, his right of action first accrues when the administrative action is final,[6] and not before,

---

[5] Section 2501 provides as follows: "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

[6] Where the administrative proceedings have not extended beyond the date of completion of the contract, the Court of Claims' rule has been that "the claim accrues, and the statutory period com-

and (2) when the contractor has breach claims as well as disputes clause claims the statute begins to run on breach claims as well only at the conclusion of administrative action on the claims arising under the contract.[7] As will be evident below, we do not reach the question of breach claims in this case. But with respect to claims arising under the contract, such as one asserted under the changes clause, we agree with the Court of Claims and essentially for the reasons which that court articulated.

1. We start with the obvious: Section 2401 (a) provides a time limit upon bringing civil actions against the United States. The "civil action" referred to is a civil action in a court of competent jurisdiction. Cf. *Unexcelled Chemical Corp.* v. *United States,* 345 U. S. 59. Such a civil suit is seemingly barred if the right to bring it first accrued more than six years prior to the date of filing the suit. Our initial inquiry is, therefore, when the right of the contractor in this case to bring suit in the District Court

---

mences, at the time of completion or acceptance (if the latter is contemplated)." 177 Ct. Cl. 234, 242, 368 F. 2d 847, 853.

[7] The Court of Claims summarized its prior rulings with respect to co-existing breach and disputes clause claims as follows:

"Reading them all together, these opinions show, we think, that where a contractor has both 'disputes-clause' items and 'breach-type' claims under a single contract, the following standards have controlled in this court: (i) there should be only one suit to enforce the various claim-items; (ii) the contractor *can* bring suit on the ripened 'breach-type' items before completion of the administrative process on the 'disputes-clause' items, but if he does so he may well lose the latter claims unless he includes them (by proper amendment, if necessary, as they mature) in his court action; *but* (iii) the contrac:or need not file suit on the 'breach-type' items until after the end of the administrative process, when all the items have ripened and can be included in the one petition. In sum, our rule has been that the time-bar will not fall until six years after the administrative determination, but suit can be filed earlier, with the plaintiff taking the risk that he may thereby split his cause of action." 177 Ct. Cl., at 248–249, 368 F. 2d, at 857.

first accrued. In our opinion, if its claim arose under the contract, it first accrued at the time of the final decision of the Armed Services Board of Contract Appeals, that is, upon the completion of the administrative proceedings contemplated and required by the provisions of the contract.

With respect to claims arising under the typical government contract, the contractor has agreed in effect to convert what otherwise might be claims for breach of contract into claims for equitable adjustment. The changes clause, for example, permits the Government to make changes in contract specifications. Such changes are not breaches of contract. They do give rise to claims for equitable adjustments which the Government agrees to make, if the cost of performance is increased or the time for performance changed. But whether and to what extent an adjustment is required are questions to be answered by the methods provided in the contract itself. The contractor must present his claim to the contracting officer, whose decision is final unless appealed for final action by the department head or his representative, here the Armed Services Board of Contract Appeals. Until that Board has acted, the contractor's claim is not subject to adjudication in the courts.[8] Until then, he has only the right to have the existence and extent of his claimed adjustment determined by the administrative process agreed upon. But, as we have said, the "right of action" of which § 2401 (a) speaks is not the right to administrative action but the right to file a civil action in the courts against the United States. Under the contract we have here, the contractor's claim was subject only to administrative, not judicial, determina-

---

[8] We do not have a situation here where the United States refuses to process the claim in accordance with its agreement or otherwise departs from the agreed-upon scheme for settling disputed issues within the disputes clause.

tion in the first instance, with the right to resort to the courts only upon the making of that administrative determination.

It is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts. In *United States* v. *Holpuch Co.*, 328 U. S. 234, the question was whether a contractor's failure to exhaust the administrative appeal provisions of a government construction contract bars him from bringing suit in the Court of Claims to recover damages. The Court held that it did. According to the Court, the disputes clause

> "is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. . . . It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. *United States* v. *Blair*, 321 U. S. 730, 735. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. . . . And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court." 328 U. S. 234, 239–240.

See also *United States* v. *Blair*, 321 U. S. 730, and *United States* v. *Callahan Walker Co.*, 317 U. S. 56, 61, where the disputes clause procedures are described as the "only avenue for relief."

2. Even when the contractual scheme has run its course and the contractor is free to file his suit in court, he is not entitled to demand a *de novo* determination of

his claim for an equitable adjustment. The evidence in support of his case must have been presented administratively and the record there made will be the record before the reviewing court. *United States* v. *Carlo Bianchi & Co.,* 373 U. S. 709; *United States* v. *Utah Construction Co.,* 384 U. S. 394. The court performs principally a reviewing function. Only if it is alleged and proved that the administrative determination was arbitrary, capricious, or not supported by substantial evidence may the court refuse to honor it. This much is clear not only from the disputes clause itself but from the Wunderlich Act.[9] In that statute, entitled "An Act to permit review . . . ," 68 Stat. 81, Congress widened the scope of judicial review but at the same time recognized the finality of the administrative decision absent the specified grounds for setting it aside. The focus of the court action is the validity of the administrative decision. Until that decision is made, the contractor cannot know what claim he has or on what grounds administrative

---

[9] 41 U. S. C. §§ 321 and 322 provide as follows:

"§ 321. Limitation on pleading contract-provisions relating to finality; standards of review.

"No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fradulent [*sic*] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

"§ 322. Contract-provisions making decisions final on questions of law.

"No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

action may be vulnerable. It is only then that his claim or right to bring a civil action against the United States matures and, as the Court of Claims said, that he has "the right to demand payment . . . the hallmark of accrual of a claim in this court." 177 Ct. Cl., at 252, 368 F. 2d, at 859.

3. To hold that the six-year time period runs from the completion of the contract, as the Government insists, would have unfortunate impact. The contractor is compelled to resort to administrative proceedings which may be protracted and which may last not only beyond the completion of the contract but continue for more than six years thereafter. If the time bar starts running from the completion date, the contractor could thus be barred from the courts by the time his administrative appeal is finally decided. This would be true whether he wins or loses before the board of appeals. Even if he prevailed there and was granted the equitable adjustment he sought, the Government would be immune from suit to enforce the award if more than six years had passed since the completion of the contract. This is not an appealing result, nor, in our view, one that Congress intended. The Wunderlich Act evidences a congressional purpose to insure adequate judicial review of administrative decisions on claims arising under government contracts; it is very doubtful that it anticipated no review at all if administrative proceedings, compulsory on the contractor, continued for more than six years beyond the contract's completion date.[10]

---

[10] The Committee Report on the Wunderlich Act disaffirms any intention to confer any new rights on the contractor other than the widened scope of review and refers specifically to the six-year statute of limitations barring stale suits against the Government. But the report does not suggest when the limitations period begins to run or purport to alter or to disagree with the then-extant judicial constructions of either § 2401 or § 2501 by the Court of Claims or by any other court. See H. R. Rep. No. 1380, 83d Cong., 2d Sess.

The Government suggests that the contractor may easily avoid such untoward results by the timely filing of a protective suit which could remain inactive pending the conclusion of administrative proceedings. But the contractor is not legally entitled to ask the courts to adjudicate his claim as an original matter. Nor can he sensibly ask the courts to review a decision which has not yet been made. He cannot, with honesty, make the necessary allegations to support an action for review until the administrative process is completed and the agency decision known. Since it would remain quiescent until the administrative decision is rendered, the protective suit would be a sheer formality in any event—a procedural trap for the unwary and an additional complication for those who manage the dockets of the courts. Certainly it would be no help to those contractors for whom it is already too late to file such a suit, which is true of the petitioner in this case.[11]

4. The Government challenges what the Court of Claims in *Nager Electric* considered to be the long-standing rule found in its own past cases. It asserts that many of the cases from which the purported rule was sifted do not involve the standard disputes clause and those that do state the rule by way of dictum only. But we think the Court of Claims fairly reflected the thrust and tenor

---

[11] We should in this respect heed the words of the Court of Claims: "The United States has known for decades that contract suits will be timely in this court if they are filed within six years after the administrative determination, and has probably acted on that assumption in keeping records and retaining evidence. On the other hand, to say abruptly at this moment that limitation runs from the contract's completion, regardless of subsequent mandatory administrative proceedings, would undoubtedly cut off scores of contractors who, relying on our past decisions, have waited to bring suit until the ending of the administrative process. There is no adequate reason to disrupt these justified expectations." 177 Ct. Cl., at 253–254, 368 F. 2d, at 860.

of its prior opinions.[12]   At least, based on those cases, the ordinary contractor would have been wholly justified in concluding that he had six years from the conclusion of administrative proceedings to file his suit.   Nor, aside from the decision in this case, have we been cited to any court of appeals decisions in Tucker Act (24 Stat. 505) cases, which are contrary to the rule followed by the Court of Claims.

5. This brings us to the cases in this Court upon which the Government and the Court of Appeals have relied: *McMahon* v. *United States,* 342 U. S. 25; *Soriano* v. *United States,* 352 U. S. 270; and *Unexcelled Chemical Corp.* v. *United States,* 345 U. S. 59.   None of them was a Tucker Act suit involving a disputes clause claim. *McMahon* was an action brought by an injured seaman against the United States for negligence and unseaworthiness.   The Suits in Admiralty Act requires actions to be brought within two years after "the cause of action arises."   The Clarification Act, 57 Stat. 45, 50 U. S. C.

---

[12] The cases cited by the Court of Claims are the following:

*Electric Boat Co.* v. *United States,* 81 Ct. Cl. 361, 367–368, cert. denied, 297 U. S. 710; *Austin Eng'r Co.* v. *United States,* 88 Ct. Cl. 559, 562–564; *Holton, Seelye & Co.* v. *United States,* 106 Ct. Cl. 477, 501, 65 F. Supp. 903, 907; *Griffin* v. *United States,* 110 Ct. Cl. 330, 372–373, 77 F. Supp. 197, 206, rev'd on other grounds, *sub nom. United States* v. *Jones,* 336 U. S. 641; *Art Center School* v. *United States,* 136 Ct. Cl. 218, 226, 142 F. Supp. 916, 921; *Empire Institute of Tailoring, Inc.* v. *United States,* 142 Ct. Cl. 165, 168, 161 F. Supp. 409, 411; *International Potato Corp.* v. *United States,* 142 Ct. Cl. 604, 606–607, 161 F. Supp. 602, 604–605; *Clifton Products, Inc.* v. *United States,* 144 Ct. Cl. 806, 809, 169 F. Supp. 511, 512–513; *Cosmopolitan Mfg. Co.* v. *United States,* 156 Ct. Cl. 142, 144, 297 F. 2d 546, 547, cert. denied *sub nom. Arlene Coats* v. *United States,* 371 U. S. 818; *Steel Improvement & Forge Co.* v. *United States,* 174 Ct. Cl. 24, 29–30, 355 F. 2d 627, 631.

The Court of Claims also dealt with *Aktiebolaget Bofors* v. *United States,* 139 Ct. Cl. 642, 644, 153 F. Supp. 397, 399, a case containing statements seemingly contrary to those found in the above cases.

App. § 1291 (a), which brought such a seaman's suit within the ambit of the Suits in Admiralty Act, permits court action only if the claim has been administratively disallowed, but sets no time within which a claim must be presented to the administrative body. The Court held that the limitations period ran from the time of the injury, not from the date of the disallowance of the claim. The Court saw no indications that Congress in passing the Clarification Act intended to postpone the usual time of accrual of the cause of action until the date of disallowance, since this would permit the claimant to postpone indefinitely the commencement of the running of the statutory period.

The Court has pointed out before, however, the hazards inherent in attempting to define for all purposes when a "cause of action" first "accrues." Such words are to be "interpreted in the light of the general purposes of the statute and of its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought." *Reading Co.* v. *Koons,* 271 U. S. 58, 62; see also *United States* v. *Dickinson,* 331 U. S. 745, 748. Cases under the Suits in Admiralty Act do not necessarily rule Tucker Act claims. The purpose of the Clarification Act was to prevent unnecessary litigation by providing for notice of injury to the United States and for the opportunity to settle claims administratively. But while suit was permitted only if a claim had been "disallowed," the applicable regulations provided that if a claim was not rejected within 60 days after filing, it would be deemed to have been administratively disallowed and the claimant would be free to enforce his claim. There was no chance for administrative action to consume the entire limitations period and therefore bar all resort to the courts.

In disputes clause cases, however, final administrative action, which the claimant must await, may occur more

than six years after the completion of the contract. When it does, the claimant would be time-barred if the six-year period is measured from the date of final performance. Nor does the claimant in cases like the one before us have unlimited discretion as to when to file his claim. The standard changes clause [13] requires him to present his claim within 30 days and most other clauses in government contracts calling for an equitable adjust-

---

[13] The Court of Claims dealt with the matter as follows:

"Similarly, the contractor in the cases before us (and the mass of such cases) is not left at large to present his claim administratively whenever he likes. The Disputes clause does not itself fix a time within which a disputed issue of fact must be presented to the contracting officer, but that is not ordinarily true of the various substantive contractual clauses which lead to equitable adjustments or comparable relief under the contract. Those specific clauses usually have built-in time limits, and where no specific period is established in the contract the contractor cannot delay unreasonably. Cf. Dawnic Steamship Corp. v. United States, 90 Ct. Cl. 537, 579 (1940). Neither this court nor the administrative tribunals have had any great difficulty in handling belated claims by contractors under the various contract-adjustment articles. Contractors have not been able to extend the limitations period unduly by unilaterally postponing the commencement of the administrative process." 177 Ct. Cl., at 259–260, 368 F. 2d, at 864.

The court also noted that:

"The standard Changes clause in construction contracts provides that claims for adjustment must be asserted within 10 days; the Changed Conditions clause calls for an immediate notification to the contracting officer; the Delays-Damages clause contemplates a notice within 10 days of excusable delays; the Price Adjustment for Suspension, Delays, or Interruption of Work clause sets 20 days as the normal period. See United States v. Utah Constr. & Mining Co., 384 U. S. 394, 397–399 n. 1, 416 n. 14, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1966)." *Id.*, at 259, n. 29, 368 F. 2d, at 864, n. 29.

The 30-day period within which a fixed-price supply contractor must assert his claim for equitable adjustment arising from changes, see text above and *supra*, n. 3, may be shortened in accordance with Department procedure, 32 CFR § 7.103–2, or with negotiations, 32 CFR § 597.103–2.

ment also contain their own time limitations. Where this is not true, the contractor cannot delay unreasonably in presenting his claim. This is the rule the, Court of Claims follows. See *Nager Electric, supra,* 177 Ct. Cl., at 259, 368 F. 2d, at 864.

Nor. do *Soriano* or *Unexcelled* control this case. In *Soriano* the six-year time bar was held to run from the date of the requisitioning of foodstuffs and equipment by Philippine guerrilla forces and not from the date of the disallowance of a claim filed with the Army Claims Service. The majority in that case expressly held that the administrative action was not a prerequisite to suit in the Court of Claims. Likewise, in *Unexcelled,* where the statutory period was held to run from the date of the breach of statutory duty under the Walsh-Healey Act (49 Stat. 2036), rather than from the date of the administrative determination of the liquidated damages due the Government, it seems apparent that the United States, to which damages were payable, could have brought suit without first resorting to administrative remedies.

6. Finally, the Government relies on Public Law 89–505, 80 Stat. 304, 28 U. S. C. § 2415 (1964 ed., Supp. II), enacted on July 18, 1966, which for the first time established a general statute of limitations on government tort claims and on suits by the Government for money damages founded on any contract, express or implied. Such suits must now be brought within "six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law." As an example of such administrative proceedings, the relevant committee reports and hearings mentioned the administrative proceedings required under the standard disputes clause contained in government contracts. H. R. Rep. No. 1534, 89th Cong., 2d Sess., at 4; S. Rep. No. 1328, 89th Cong., 2d Sess., at 3; Hearing on H. R. 13652 before Sub-

committee No. 2 of the House Committee on the Judiciary, 89th Cong., 2d Sess., 7 (1966). Based on this new provision, the Government argues that Congress necessarily assumed that the right of action of the United States in disputes clause situations first accrues and the limitations period begins to run prior to the completion of administrative proceedings. Otherwise there would have been no need for the one-year period following final administrative decision in order to save actions which might otherwise be barred by the six-year limitation. What this amounts to, the Government says, is a congressional construction of the similar "first accrual" language of the older limitations on private actions contained in § 2401 (a) and § 2501. Likewise, it argues, this construction precludes holdings such as that of the Third Circuit in *Northern Metal Co.* v. *United States,* 350 F. 2d 833, to the effect that the statute is tolled during the pendency of administrative proceedings.

This argument is not without force. There is no question of the power of Congress to define the limits of its waiver of sovereign immunity. But we are not convinced that Congress intended to issue any determinative construction of § 2401 in formulating and passing § 2415. Neither in the hearing on H. R. 13652 nor in the committee reports did Congress focus on the first accrual language of § 2401, on the existing construction of that language by the Court of Claims or any other court or on the situation of the government contractor desiring to sue the United States during or after the conclusion of administrative proceedings under the disputes clause. The bill was recommended to the Congress by the Department of Justice at the time the Department was litigating *Nager Electric* in the Court of Claims in which the Department ultimately took the position that the private contractor's right of action first accrues no later than the completion of the contract.

This position was rejected by the Court of Claims, in favor of what is considered to be its existing rule—that the private contractor's right to sue on a disputes clause claim first accrues with the termination of administrative proceedings. Given the Wunderlich Act, and the prior litigative history of disputes clause issues in this Court and in the Court of Claims, we are doubtful that Congress intended to bar a private contractor's suit on a disputes clause claim where administrative proceedings continue for more than six years after the completion of the contract. Congress understood what the impact of such a rule would be if applied to the Government and made due allowance for it by allowing the Government the one-year grace period. We see no indications that it had in mind the private litigant whose right to sue the United States is governed by § 2401. We are hesitant to believe that in passing a statute aimed at equalizing the litigative opportunities between the Government and private parties [14] Congress consciously extended

[14] The congressional intent to "put the Government on a parity with those private litigants who may sue" and "to equalize the position of litigants" is sufficiently evident. See Hearing on H. R. 13652 before Subcommittee No. 2 of the House Committee on the Judiciary, 89th Cong., 2d Sess., 9, 11 (1966); H. R. Rep. No. 1534, 89th Cong., 2d Sess., at 4; S. Rep. No. 1328, 89th Cong., 2d Sess., at 2. Whether Congress succeeded in establishing exact equality between contractors and the Government is of course another question. In this regard, it is interesting to note that in addition to the one year following the termination of administrative proceedings in which the Government can institute a suit under § 2415, subsection (e) of that provision provides that:

"In the event that any action to which this section applies is timely brought and is thereafter dismissed without prejudice, the action may be recommenced within one year after such dismissal, regardless of whether the action would otherwise then be barred by this section. In any action so recommenced the defendant shall not be barred from interposing any claim which would not have been barred in the original action." 28 U. S. C. § 2415 (e) (1964 ed., Supp. II).

a one-year saving period to the Government to overcome the effects of protracted administrative proceedings and refused similar relief to the contractor. At least we are sufficiently doubtful that we prefer to await a somewhat clearer signal from the Congress.

We therefore conclude that if the claim filed by the contractor in this case was a claim "arising under" the contract and was therefore subject to administrative determination, (1) its right to bring a civil action first accrued when the Armed Services Board of Contract Appeals finally ruled on its claim and (2) its suit in the District Court was timely filed. The Government in its answer to the complaint, however, denied that the claim arose under the contract, characterized it instead as a pure breach of contract claim which accrued no later than the date of the completion of the contract. The District Court did not decide this issue; nor do we. This matter will be open on remand to the District Court. If the claim is not within the disputes clause, the court may then determine whether it is time-barred.

*Reversed and remanded.*