**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS and International Association of Fire Chiefs, Defendant.**[1]

**Civ. A. No. 89–0295.**

United States District Court,
District of Columbia.

June 20, 1989.

A. Patricia Frohman, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Thomas A. Woodley and Erick J. Genser, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

The government in this case seeks money due the United States under a final determination of a contracting officer. The Court has jurisdiction pursuant to 28 U.S.C. § 1345. This matter now comes before the Court on defendant's Motion to Dismiss on the ground that the statute of limitations bars the government's claim, which has been fully briefed.[2]

1. The International Association of Firefighters (IAFF) is an entity which is separate and distinct from the International Association of Fire Chiefs. The complaint mistakenly describes them as a single entity. Only the Firefighters are involved.

2. As the motion to dismiss is accompanied by affidavits, the Court is treating defendant's motion as a motion for summary judgment on this issue, and is relying on plaintiff's Motion for

Summary Judgment, filed April 12, 1989 with respect to this statute of limitations issue, as well as plaintiff's opposition to the motion to dismiss. The Court approved the parties' stipulation permitting defendant to delay filing a response to the summary judgment motion until after the Court rules on the motion to dismiss and will consider the other arguments raised in plaintiff's summary judgment motion at that time.

The following are undisputed material facts.

1. IAFF entered into two contracts with the Department of Labor (DOL) covering the period October 30, 1978 to April 30, 1981 under which it was to perform certain services similar to services it had performed under prior contracts.

2. The first contract at issue was signed on October 30, 1978 covering the period from October 30, 1978 until October 29, 1979. It was later extended from October 30, 1979 through December 31, 1980. A second contract covered the period January 1, 1980 to April 30, 1981.

3. On or about the second week of November, 1978, DeForrest Cline, the Contract Service Officer employed by the Bureau of Apprenticeship and Training, DOL, received an invoice from IAFF for actual and estimated services for the period of October 1, 1978 through November 30, 1978, including $42,212 that were incurred between October 1 and October 29, 1978, prior to the signing of the October 30 contract. It was ultimately approved for payment by the Department of Labor.

4. In late 1981 and early 1982, an outside audit was conducted regarding the IAFF contracts, and on April 6, 1982, the draft audit recommended that certain costs of the IAFF be disallowed.

5. IAFF responded to the draft on May 6, 1982, and its comments were considered in the final audit report submitted June 10, 1982, which questioned costs totalling over $170,500.[3]

6. On November 11, 1982, DOL sent the IAFF the agency's initial determination of disallowed costs resulting from the audit, disallowing $170,438.

7. IAFF was given a further opportunity to present its position.

8. On February 4, 1983, DOL sent the IAFF a letter confirming that the final determination of the agency was that $51,998 had been disallowed with respect to costs under the two contracts, largely relating to the October, 1978 period. Citing statutes, regulations and an Office of Management and Budget circular, this confirmation letter advised IAFF of its appeal rights and collection procedures.

9. On February 22, 1983, DOL sent a "Demand Letter" requesting payment of the claimed amount. Subsequent demand letters were sent in April and May, 1983.

10. No payment was made on the demands, and no appeals were taken.

11. Suit was filed on February 2, 1989.

There is no dispute that the applicable statute of limitations is found in 28 U.S.C. § 2415(a), which provides in relevant part that:

> Subject to the provisions of section 2416 of this title ... every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed *within six years after the right of action accrues* or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later ... (emphasis added)

IAFF did not pursue administrative appeals, so the six year provision is applicable.

The sole issue on which IAFF's motion to dismiss turns is when the statute of limitations began to run. The United States contends that its cause of action accrued for the second contract only when the contracting officer made a final decision pursuant to 41 U.S.C. § 605, which provides in pertinent part:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. The contracting officer shall issue his decision in writing, and shall mail or otherwise furnish a copy of the

---

3. There is a minor discrepancy between the plaintiff and the defendant's figures, no doubt due to a typographical error. The figure is either $170,578 or $170,588.

decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. The contracting officer's decision was dated February 4, 1983, and this suit was filed February 3, 1989. The government contends that the cause of action on the first contract also accrued on February 4, 1983.[4]

Relying on general contract law principles, IAFF contends that the cause of action accrued at the time of breach. It gives the Court several alternative dates for tolling the statute. The first is no later than April 30, 1981, when the second of the two contracts at issue terminated. IAFF further states that the United States knew that the IAFF was claiming certain charges in 1978, and was therefore on notice of the payments for over ten years before this suit was filed. Its fallback positions are that the first audit report of April, 1982, which detailed precisely the four cost items not allowed under the two contracts, and that the November 8, 1982 letter confirming the agency's position were both greater than six years prior to the filing of this case.

Both sides find some support for their positions in the cases, and the Court could find no controlling cases directly on point. It was obligated to rely on cases in which another law specified when an action accrued under § 2415(a), general statute of limitation principles, and interpretation of analogous statutes of limitation.

The Supreme Court's reasoning in *Crown Coat Front Co., Inc. v. United States*, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), decided under 28 U.S.C. § 2401 for claims against the government, is apposite. The Court squarely held that when administrative proceedings subject to the dispute clause in a government contract extend beyond the completion of the contract, the contractor's right of action accrues when the administrative action is final, and not before. The government had sought to block the contractor's action by urging that the Court use the completion date of the contract as the accrual date. The Court stated:

> In our opinion, if [the contractor's] claim arose under the contract, it first accrued at the time of the final decision of the Armed Services Board of Contract Appeals, that is, upon the completion of the administrative proceedings contemplated and required by the provisions of the contract ...
>
> Until that Board has acted, the contractor's claim is not subject to adjudication in the courts.

386 U.S. at 511, 87 S.Ct. at 1181. What is sauce for the goose is sauce for the gander, and *Crown Coat Front* strongly suggests that the government's cause of action in the instant case accrues when the procedural predicate for filing suit had been completed. *See also, Impro Products, Inc. v. Block*, 722 F.2d 845, 850 (D.C.Cir.1983).

In cases decided under § 2415(a), the weight of the authority from this Circuit and elsewhere, and the better rule, is that absent undue delay on the part of the government, the action accrues when the government can first sue, which in this case was February 4, 1983. For example, in a § 2415(a) case involving government demands on Small Business Administration loan guarantors, the District Court here held that the statute begins to run "when the claim first could be sued upon," and accepted the government's argument that the claim could be sued upon when demand letters were sent to the guarantors. *United States v. Rollinson*, 629 F.Supp. 581, 583–584 (D.D.C.1986). On appeal, Rollinson argued that because the debts were in arrears and that their understanding was that the notes would be declared in default at the first sign of trouble, the Bank waited "unreasonably too long in making the demand." In dicta, the Appeals Court, while affirming the District Court, stated that its prior decision in *Nyhus v. Travel Management Corp.*, 466 F.2d 440 (D.C.Cir.

---

4. It was governed by the dispute clause within the contract, which, like 41 U.S.C. § 605, provided for the contracting officer to reduce a final decision to writing, and to permit an appeal within a specified time thereafter. The final decision was reached on the same day for both contracts.

1972) was applicable in the loan guarantee context. *United States v. Rollinson*, 866 F.2d 1463 (D.C.Cir.1989). That is, "a party is not at liberty to stave off operation of the statute inordinately by failing to make demand; where statutorily unstipulated, the time for demand is usually a reasonable time." *Nyhus* at 452–453. If the United States did not wait too long in making its demands, this case supports the government's position. Other circuits, including the Eighth, First, Eleventh and Seventh, support the government's interpretation of § 2415(a), though again, the factual context led courts to rely on different regulations.[5]

■ In the instant case, the initial audit contemplated a much larger recovery from IAFF than was sought by the final determination. While determination of an exact amount is not always required for a statute to begin to run, the government contracts dispute process contemplates an opportunity to respond, and, as this case demonstrates, quite a bit of flexibility in the final determination of the amount owing. The period of limitations does not always begin on the date of the wrong, as IAFF contends. No cause of action generally accrues until the plaintiff has a right to enforce his cause, *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353, 1358 (5th Cir.1972), and in this case, the United States had no right to enforce its cause until the February 4, 1983 letter had been sent. *See also, United States v. General Electronics, Inc.*, 556 F.Supp. 801 (D.N.J.1983) (the government's action accrued when a contracting officer determined the amount of excess costs); *United States v. Alessi*, 599 F.2d 513, 515 n. 4 (2d Cir.1979).[6]

IAFF's primary position that the cause of accrued when anyone at DOL knew of the payments is untenable as 28 U.S.C. § 2416(c) prevented the running of the statute during this time. This section provides for exclusion of time during which

> facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances.

No audit had alerted the United States to the overpayment, and the contracting officer with knowledge of the payments did not have the authority to demand repayment and fulfill every prerequisite for demands for repayment. For these reasons, and because the audit was done in a timely fashion, § 2416(c) supports the government's position. IAFF's argument also fails because at least one government offi-

---

**5.** The statute of limitations question in the Medicare reimbursement arena is analogous: at what point in the reimbursement process is the liability of the parties sufficiently fixed to cause the applicable statute (28 U.S.C. § 2415 and 2416) to begin to run? *United States v. Gravette Manor Homes*, 642 F.2d 231, 233 (8th Cir.1981). The Eighth Circuit in *Gravette Manor Homes* held that although the government may have known at the completion of the audit that some overpayments may have been made, the exact amount due from the provider, if any, is not set until certification of the audit has been done and any corrections made, and the statute begins to run on the date of the final determination of liability. *Id.*, at 234–235. The First Circuit has also held that the government's cause of action accrues and statute starts to run when the government can legally require the provider to repay overpayment. *United States v. Hughes House Nursing Home, Inc.*, 710 F.2d 891, 892 (1st Cir.1983). In *United States v. Beck*, 758 F.2d 1553 (11th Cir.1985), another action to recover Medicaid overpayments, the statute began to run in 1976 or 1977, when Blue Cross discovered the pattern of overpayments made in 1972 and 1973, gave the doctor a chance to respond and provided the doctor final notification of overpayments and informed him of his appeal rights, although the Eleventh Circuit did not specify when, within this period, it began to run. Finally, in another Medicare case, the Seventh Circuit held for the United States that the statute began to run only after the final required audit by a fiscal intermediary which determined the liability of one party to another. *United States v. Withrow*, 593 F.2d 802 (7th Cir.1979).

**6.** The case most strongly on point for the defendant's position is *U.S. v. Gavilan Joint Community College*, 849 F.2d 1246 (9th Cir.1988), in which the Ninth Circuit awarded attorney fees to Gavilan, after the United States asserted that the statute of limitations did not accrue until the final audit was completed. This case is against the weight of the authority, however, and such an award of attorney fees against the government seems unduly harsh, when the law is not at all certain.

cial will always know that payments were made, but he or she may not at that time realize that there was an overpayment.

If the Court were to rule that the cause of action accrued before completion of the statutorily required audit and comment period, the government might well be tempted to short-circuit this administrative process by filing a complaint. This would hamper the carefully-constructed administrative scheme, which no doubt often results in full settlement without resort to the Courts.

The government's auditing procedures in this case did not result in undue delay or prejudice to the defendants. Indeed, they resulted in greatly reducing the government's demand of IAFF. The interests of finality are not ill-served by tolling the statute when the government could first sue absent unreasonable delay.

Accordingly, the defendant's motion to dismiss is denied. The defendant shall file and serve by hand its response to the government's request for a protective order by June 31, 1989, and shall respond to the remaining issues in plaintiff's motion for summary judgment by August 7, 1989.

SO ORDERED.