CONFEDERATED TRIBES AND BANDS OF the YAKAMA NATION; Catherine Sanchey Wolfsberger, Plaintiffs—Appellants,

v.

UNITED STATES of America; United States Department of the Interior; Bureau of Indians Affairs; Dirk Kempthorne, Secretary of the Interior; George Skibine, Acting Assistant Secretary for Indian Affairs; * Jerold Gidner,** Director, Bureau of Indian Affairs; Stanley Speaks, Northwest Regional Director, Bureau of Indian Affairs; Pierce Harrison, Administrator, Wapato Irrigation Project; Wapato Irrigation Project, Defendants—Appellees.

* George Skibine, Acting Assistant Secretary for Indian Affairs, is substituted for his predecessor, Carl J. Artman, Assistant Secretary for Indian Affairs, pursuant to Fed. R.App. P. 43(c)(2).

No. 07–35335.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 28, 2008.

Filed Oct. 9, 2008.

** Jerold Gidner is substituted for his predecessor, William Patrick Ragsdale, as Director of the Bureau of Indian Affairs, pursuant to Fed. R.App. P. 43(c)(2).

Tim Weaver, Esquire, Law Offices of Tim Weaver, Thomas A. Zeilman, Esquire, Attorney at Law, Yakima, WA, for Plaintiffs–Appellants.

Andrew Sean Biviano, Esquire, Assistant U.S., Pamela Jean Derusha, Esquire, USSP–Office of the U.S. Attorney, Spokane, WA, Lane McFadden, Esquire, Robert W. Rodrigues, Esquire, DOJ–U.S. Department of Justice, Washington, DC, for Defendants–Appellees.

*** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

Before: HAWKINS, MCKEOWN and BYBEE, Circuit Judges.

## MEMORANDUM ***

The Confederated Tribes and Bands of the Yakama Nation ("the Yakama") and Catherine Sanchey Wolfsberger appeal the dismissal of their complaint under Rule 12(b)(1) of Civil Procedure. Setting aside the merits of the parties' arguments, we conclude this case is not yet ripe for judicial review.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

The Supreme Court has developed a two-part test for analyzing whether a controversy is sufficiently ripe. Courts must "evaluate (1) the fitness of the issues for judicial resolution, and (2) the hardship to the parties of withholding court consideration." *Id.* at 808, 123 S.Ct. 2026. Concluding that this case fails both prongs of the ripeness inquiry, we will affirm the district court.

## A. Fitness for Judicial Resolution

### 1. Lack of Factual Development

■ This case is currently unfit for judicial decision because it lacks sufficient factual development. Judicial review of agency action is not typically ripe if "further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 812, 123 S.Ct. 2026 (internal quotation marks and citation omitted); *cf. Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (listing as a factor in ripeness analysis "whether the courts would benefit from further factual development of the issues presented").

Here, for example, there is still great factual uncertainty as to who precisely cannot—and to what extent they cannot—pay their operation and maintenance ("O & M") assessments for irrigation services. For this court to evaluate the application of the challenged regulations to, for example, the Yakama, it would need to (1) determine which of the Yakama's plots do or do not generate income, and precisely what portion of any income from a given plot of land is attributable to it, and (2) set that income against the precise portion of

any O & M assessment it is responsible for as a tenant in common of the property.

The Yakama appear either to own or have a fractionated ownership interest in more than 53,700 acres of land designated for the delivery of water from the Wapato Irrigation Project. Thus in its Notice of Appeal to the Regional Director for what appear to be 2007 O & M assessments, the Yakama admitted that it was impossible "within the time for filing the Notice of Appeal to identify all of the specific parcels and grounds for appeal for each parcel."[1] Clarification of such complicated factual questions would significantly advance this court's ability to deal with the legal issues presented.

### 2. Lack of Final Agency Action

■ Factual development aside, this case is also unripe for judicial resolution for lack of a final agency decision. The Yakama argue, for example, that the Bureau of Indian Affairs (the "BIA") is partially responsible for Wolfsberger's inability to pay because it has leased her land to non-tribal farmers in the past, but "those leases have expired, and the BIA has since failed to lease the allotments despite her repeated entreaties to do so." These facts, and their legal relevance,[2] are best consid-

---

1. This determination may not appear to require particular agency expertise, but because of the nature of tribal probate law, it could be quite complicated. As noted by the Department of the Interior's Inspector General,

> under [tribal] probate laws, as individuals die, their property descends to their heirs as undivided "fractional" interests in their allotments (tenancy in common). That is, if a [tribal member] owning a 160-acre allotment dies and has four heirs, the heirs do not inherit 40 acres each. Rather, they each inherit a 1/4 interest in the entire 160-acre allotment. Over time, "fractionalization" has expanded geometrically to the point where there are hundreds of thousands of tiny fractional interests.

Office of the Inspector Gen., U.S. Dep't of the Interior, *Audit Report: Wapato Irrigation Project* 8 n. 5 (1995) (Report 95–I–1402). These observations apply to the plaintiffs in this case.

2. By statute, "owners of non-[tribal] lands under [tribal] irrigation projects" are able to seek relief from O & M assessments "because of inability to operate such lands profitably by reason of lack of fertility of the soil, inadequacy of water supply, defects of irrigation works, or for any other causes." 25 U.S.C. § 389; *see also id.* § 389a; Irrigation Operation and Maintenance, 73 Fed.Reg. 11028, 11033 (Feb. 29, 2008) ("25 U.S.C. 389 authorizes the Secretary to investigate whether non-[tribal members] have the ability to pay irrigation charges. Based on the outcome of such

ered by the agency in the first instance. As the Supreme Court has noted, it is difficult to review an agency decision that has yet to be made. *Crown Coat Front Co. v. United States,* 386 U.S. 503, 515, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).

In addition to clarifying legal and factual complications that fall squarely within its expertise, the agency, in issuing its final decision, may also moot this case. Historically, the Wapato Project administrators have under-assessed water recipients. *See generally* Office of the Inspector Gen., U.S. Dep't of the Interior, *Audit Report: Wapato Irrigation Project* (1995) (Report 95–I–1402). According to the Yakama's complaint, it was not until the mid–1980s that the BIA tried to impose O & M costs on tribal members who were unable to pay or who owned idle lands. It may very well be that the agency will find a way to provide relief to such tribal members, particularly those who protest their assessments in administrative appeals.

Given these complexities, "judicial appraisal of [the relevant issues] is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge here." *Toilet Goods Ass'n, Inc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

## B. Balance of the Hardships

■ The second prong of the ripeness analysis requires us to examine "the balance of the hardships," *Ass'n of Am. Med. Colls. v. United States,* 217 F.3d 770, 782 (9th Cir.2000), and also counsels in favor of affirming the district court. A case is more likely to be ripe if the plaintiff challenges "a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately," *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)—if, in effect, the agency action presents a comply-or-defy decision that amounts to a "Hobson's choice," *Ass'n of Am. Med. Colls.,* 217 F.3d at 783.

Here, the Yakama's primary conduct is not so adversely affected to justify an exception to the general bar against preenforcement challenges. For those tribal members who choose not to pay their O & M bills, the costs of noncompliance are interest, a penalty not to exceed six percent interest per year, and, possibly, "[a]ggressive agency collection activity." 25 C.F.R. § 171.545. These costs do not present the type of Hobson's choice that requires judicial action prior to a final agency decision.

The Yakama's further concern that it will be denied water if it fails to pay its bills remains speculative and conflicts with representations made by the government and credited by the district court. *Cf. Toilet Goods Ass'n,* 387 U.S. at 163, 87 S.Ct. 1520 (finding challenge to agency's investigatory authority unripe because, in part, "[a]t this juncture we have no idea whether or when such an inspection will be ordered and what reasons the Commissioner will give to justify his order."). If and when the BIA threatens the Yakama with termination of water service (in spite of the representations they have made to the district court and on appeal) they can

---

an investigation, the Secretary has discretion to adjust irrigation charges, but nowhere does the law require that an individual's ability to pay be factored into the irrigation rate-setting process."). Thus, the BIA's duty, or lack

thereof, to lease Wolfberger's lands may have an impact on the O & M assessments, adding a further legal wrinkle that the agency would be better poised to address in the first instance.

refile a complaint with the district court at that time.

## C. Conclusion

For the reasons stated above, we conclude that this case is not ripe for judicial review. The district court did not err by dismissing without prejudice, as opposed to staying the case pending the outcome of the administrative proceedings. Although the Yakama are troubled by potential ongoing statute of limitations concerns related to the government's continued billing for irrigation services, these concerns are unwarranted given that the running of the statute will not begin until the completion of the pending administrative proceedings. *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 715–16 (9th Cir.1991). We therefore decline to issue a stay and instead encourage the government and the Yakama to reach a reasonable and mutually acceptable billing arrangement during the pendency of any remaining proceedings.[3]

**AFFIRMED.**

---

**3.** All pending Motions are denied as moot.

[***] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.