Reena Raggi, Circuit Judge, dissenting:
A majority of the court today extends Title VII's prohibition of employment discrimination "because of ... sex," 42 U.S.C. § 2000e-2(a)(1), to discrimination based on sexual orientation. I respectfully dissent substantially for the reasons stated by Judge Lynch in Parts I, II, and III of his dissenting opinion and by Judge Livingston in her dissenting opinion.

Cf. 1 Callimachus fr. 465, at 353 (Rudolfus Pfeiffer ed., 1949) (3d century B.C.) ().

Welcomed by some, denounced by others, to be sure.

I find it hard to interpret the law to prohibit associational race discrimination but not associational sex discrimination. See Price Waterhouse v. Hopkins , 490 U.S. 228, 243 n.9, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion) ("[T]he statute on its face treats each of the enumerated categories exactly the same."). If it weren't for Simonton , therefore, I would think Holcomb stands for the proposition that "where an employee is subjected to adverse action because an employer disapproves of [a same-sex] association, the employee suffers discrimination because of the employee's own [sex]." Holcomb , 521 F.3d at 139 (emphasis in original).

Holcomb modified this Circuit's understanding of Title VII, and represents an "intervening development in the law" that justifies reconsideration of our prior precedent. See Crown Coat Front Co. v. United States , 363 F.2d 407, 414 (2d Cir. 1966) (Friendly, J., concurring) (quoting Miss. River Fuel Corp. v. United States , 314 F.2d 953, 958 (Ct. Cl. 1963) (Davis, J., concurring) ) (explaining that stare decisis applies even when the Circuit sits en banc, but that overturning precedent is nevertheless justified when the law has changed), rev'd , 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).

In that sense, I agree with Judge Cabranes that the inquiry could end there.

For example, Susan B. Anthony herself stated, in a dialogue with Frederick Douglass:
The old anti-slavery school say [sic ] women must stand back and wait until the negroes shall be recognized. But we say, if you will not give the whole loaf of suffrage to the entire people, give it to the most intelligent first. If intelligence, justice, and morality are to have precedence in the Government, let the question of woman be brought up first and that of the negro last.
Transcript of Annual Meeting of American Equal Rights Association (1869), reprinted in History of Woman Suffrage: 1861-1876 , 383 (Elizabeth Cady Stanton et al. eds.) (1882). During the debate over the addition of "sex" to Title VII, it was similarly argued that if sex was not added to the prohibited categories of discrimination, white women would have fewer protections than black men. As Representative Martha Griffiths, an early supporter of the amendment, warned during congressional hearings, "A vote against this amendment today by a white man is a vote against his wife, or his widow, or his daughter, or his sister." Gillian Thomas, Because of Sex 2 (2016). And both the civil rights and the women's movements have persistently overlooked the intersectional existence of black women and other women of color. See Kimberlé Crenshaw, Mapping the Margins : Intersectionality, Identity Politics, and Violence Against Women of Color , 43 Stanford L. Rev. 1241, 1242-43 & n.3 (1991).

Pauli Murray and Mary O. Eastwood, lawyers and women's rights activists, exemplified that recognition, writing:
[I]n matters of discrimination, the problems of women are not as unique as has been generally assumed. That manifestations of racial prejudice have been more brutal than the more subtle manifestations of prejudice by reason of sex in no way diminishes the force of the equally obvious fact that the rights of women and the rights of Negroes are only different phases of the fundamental and indivisible issue of human rights.
Pauli Murray & Mary O. Eastwood, Jane Crow and the Law: Sex Discrimination and Title VII , 34 Geo. Wash. L. Rev. 232, 235 (1965) (footnote omitted).