**UNITED STATES of America**

v.

**D. H. DAVE, INC., et al.**

**Civ. No. K–75–1805.**

United States District Court,
D. Maryland.

Dec. 28, 1976.

Jervis S. Finney, U. S. Atty., Thomas G. Banjanin, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

William B. Somerville, Douglas G. Worrall, Baltimore, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

On June 30, 1952, the United States entered into a contract with defendants D. H. Dave, Inc. and Gerben Contracting Company (hereinafter "contractors") for the construction by contractors of school shop buildings, roads, and utilities at the United States Army installation in Aberdeen, Maryland. Contractors purchased a performance bond naming defendant Fidelity and Casualty Company of New York (hereinafter "Fidelity") as surety. That bond is still in effect. On April 3, 1954, the United States, asserting default by contractors because of failure timely to complete performance as required by the contract, terminated the contract. Thereafter, the work was assigned by the Government to another contractor who completed it on February 8, 1955. Under the terms of the June 30, 1952 contract including the standard disputes clause set forth therein,[1] defendants are

---

1. That clause provides:

6. —DISPUTES: Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall reduce his decision to writing and send by registered mail, return receipt requested, a copy thereof to the contractor at his address shown herein. Within 30 days from the receipt thereof, the contractor may appeal in writing to the Chief of Engineers, whose written decision thereon, or that of his designated representative or representatives, shall be final and conclusive upon the parties hereto unless, within 30 days after receipt thereof by the contractor, he appeals in writing to the Secretary of the Army, which appeal shall operate to vacate said decision of the Chief of Engineers. If the dispute is determined by the Secretary of the Army, his written decision, or that of his designated representative or representatives, shall be final and conclusive upon the parties hereto. The Chief of Engineers or the Secretary of the Army may designate an individual or individuals, other than the Contracting Officer, or a board, as his authorized representative to determine appeals under this article. In any proceeding under the provisions of this article, the contractor shall be afforded an opportunity to be heard and offer evidence in support of his appeal. Pending decision of a dispute hereunder the contractor shall diligently proceed with the performance of this contract. Any sum or sums allowed to the contractor under the provisions of this

liable to the Government for any excess costs incurred as a result of any default by contractors. The federal contracting officer determined that contractors were in default as of April 3, 1954 and that contractors would be required to pay to the Government certain excess costs.

■ After an extended series of administrative appeals and remands, which culminated in a decision by the Armed Services Board of Contract Appeals entered on June 7, 1973, finding contractors liable to the United States in the net amount of $16,739.47, the Government made demand upon Fidelity on November 7, 1974 for payment in full of $16,739.47. That demand has not been met. On December 12, 1975, more than two years after the final administrative action was completed on June 7, 1973, the Government instituted this collection case. All defendants have moved to dismiss, on the grounds that the within action is barred by limitations.[2] In so doing, defendants rely upon 28 U.S.C. § 2415(a), which provides, in part:

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed *within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later * * *.* [Emphases added.]

The Government argues that the right of action accrues on the date of the final administrative action. Defendants contend that it accrues at the time of the breach of the contract, that is, in this case, on April 3, 1954. However, in this case, the earliest legally effective date upon which the accrual could have occurred is July 18, 1966, the

date upon which the statute, of which 28 U.S.C. § 2415(a) is part, was enacted. *See* 28 U.S.C. § 2415(g) which provides:

> Any right of action subject to the provisions of this section which accrued prior to the date of enactment of this Act shall, for purposes of this section, be deemed to have accrued on the date of enactment of this Act.

In *United States v. Birmingham Fire Ins. Co.,* 370 F.Supp. 501 (W.D.Pa.1974), Judge Teitelbaum held that the right of action accrued, under section 2415(a), upon the final administrative determination. In so doing, he relied upon *Crown Coat Front Co. v. United States,* 386 U.S 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967). That case did not involve section 2415(a). Rather it was concerned with the construction of 28 U.S.C. § 2401(a), which provides:

> Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

In *Crown Coat,* the contractor, after unsuccessfully pursuing and exhausting its rights under the standard dispute clause in its contract with the Government,[3] brought suit in federal district court claiming entitlement to an equitable adjustment. That suit was instituted more than six years after the contractor had completed performance of the contract, but a bit more than five months (and well within a year) after final government administrative action adverse to the contractor, pursuant to the standard disputes clause. The Government contended that the "right of action first accrue[d]" when the Government failed to meet its obligations with respect to the contract—a date concededly more than six

---

article shall be paid by the Government as part of the cost of the articles or work herein contracted for and shall be deemed to be within the contemplation of this contract.

**2.** That motion in view of the filing of documents other than pleadings is treated as a mo-

tion for summary judgment under Federal Civil Rules 12(b) and 56.

**3.** The differences in that clause and in the clause in the contract involved in this case are not material.

years before the commencement date of the federal district court case. In rejecting the Government's argument, Mr. Justice White wrote (at 519–22, 87 S.Ct. at 1186):

Finally, the Government relies on Public Law 89–505, 80 Stat. 304, 28 U.S.C. § 2415 (1964 ed., Supp. II), enacted on July 18, 1966, which for the first time established a general statute of limitations on government tort claims and on suits by the Government for money damages founded on any contract, express or implied. Such suits must now be brought within "six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law." As an example of such administrative proceedings, the relevant committee reports and hearings mentioned the administrative proceedings required under the standard disputes clause contained in government contracts. H.R.Rep.No.1534, 89th Cong., 2d Sess., at 4; S.Rep.No.1328, 89th Cong., 2d Sess., at 3; Hearing on H.R. 13652 before Subcommittee No. 2 of the House Committee on the Judiciary, 89th Cong., 2d Sess., 7 (1966). Based on this new provision, the Government argues that Congress necessarily assumed that the right of action of the United States in disputes clause situations first accrues and the limitations period begins to run prior to the completion of administrative proceedings. Otherwise there would have been no need for the one-year period following final administrative decision in order to save actions which might otherwise be barred by the six-year limitation. What this amounts to, the Government says, is a congressional construction of the similar "first accrual" language of the older limitations on private actions contained in § 2401(a) and § 2501. Likewise, it argues, this construction precludes holdings such as that of the Third Circuit in *Northern Metal Co. v. United States,* 3 Cir., 350 F.2d 833, to the effect that the

statute is tolled during the pendency of administrative proceedings.

This argument is not without force. There is no question of the power of Congress to define the limits of its waiver of sovereign immunity. But we are not convinced that Congress intended to issue any determinative construction of § 2401 in formulating and passing § 2415. Neither in the hearing on H.R. 13652 nor in the committee reports did Congress focus on the first accrual language of § 2401, on the existing construction of that language by the Court of Claims or any other court or on the situation of the government contractor desiring to sue the United States during or after the conclusion of administrative proceedings under the disputes clause. The bill was recommended to the Congress by the Department of Justice at the time the Department was litigating *Nager Electric [Nager Electric Co. v. United States]*[4] in the Court of Claims in which the Department ultimately took the position that the private contractor's right of action first accrues no later than the completion of the contract. This position was rejected by the Court of Claims, in favor of what is considered to be its existing rule—that the private contractor's right to sue on a disputes clause claim first accrues with the termination of administrative proceedings. Given the Wunderlich Act, and the prior litigative history of disputes clause issues in this Court and in the Court of Claims, we are doubtful that Congress intended to bar a private contractor's suit on a disputes clause claim where administrative proceedings continue for more than six years after the completion of the contract. Congress understood what the impact of such a rule would be if applied to the Government and made due allowance for it by allowing the Government the one-year grace period. We see no indications that it had in mind the private litigant whose right to sue the United States is governed by § 2401. We are hesitant to believe

4.  368 F.2d 847, 177 Ct.Cl. 234 (1966).

that in passing a statute aimed at equalizing the litigative opportunities between the Government and private parties [14] Congress consciously extended a one-year saving period to the Government to overcome the effects of protracted administrative proceedings and refused similar relief to the contractor. At least we are sufficiently doubtful that we prefer to await a somewhat clearer signal from the Congress. [Footnote omitted.]

The report of the Senate Judiciary Committee, part of the legislative history referred to by Mr. Justice White in the above quotation from *Crown Coat,* includes the following:

In all such contract matters, the action would be barred unless it were brought by the Government within 6 years after the right of actions accrues, or within 1 year after a final decision in a required administrative proceeding, whichever is later. This last provision, which has the effect of tolling the running of the statute of limitations during mandatory administrative proceedings, is necessary because of the great number and variety of such proceedings made possible by current statutes. An administrative proceeding ordinarily consumes a considerable period of time and, as has been noted, *the bill would permit the Government a year after the final administrative decision in which to present its case for judicial determination. An example of such an administrative proceeding are those which involve appeals under the "disputes" clause of Government contracts.* [Emphases added.]

S.Rep.No.1328, 89th Cong., 2d Sess. 3, *reprinted in* [1966] U.S. Code Cong. & Ad. News, 2502, 2504. That legislative history is completely consistent with the plain language of section 2415(a). The Government's approach herein, and in this Court's opinion, with all due respect, Judge Teitelbaum's holding in *Birmingham Fire,* read out of existence the statutory words "or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later". Moreover, Mr. Justice White's opinion in *Crown Coat* appears specifically to contemplate a different result under section 2415(a) than under section 2401(a).

 Additionally, it perhaps is not out of line to comment that there never was a case more clearly within the purpose of the statute of limitations than the present one. The contract sued upon in this case was terminated by governmental action over twenty-two years ago. When the final administrative decision was filed in 1973, there was seemingly no reason why the Government required any lengthy period of time to prepare to sue and to file suit for enforcement. A simple statement of the factual and administrative background and a demand for judgment were all that had to be, and were eventually herein, filed. The Government hardly needs six years after final administrative action to institute such a suit—which is the result which would obtain if the Government prevailed herein. Accordingly, summary judgment will be entered in this case for defendants.