UNITED STATES of America, Plaintiff,

v.

SKIDMORE, OWINGS & MERRILL,
Defendant.

No. 80 Civil 3060.

United States District Court,
S. D. New York.

Jan. 29, 1981.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for plaintiff; Jonathan A. Lindsey, Asst. U. S. Atty., New York City, of counsel.

Christy & Viener, New York City, for defendant; Arthur H. Christy, Leonard J. Colamarino, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

In this suit brought by the United States against the architectural firm Skidmore, Owings & Merrill ("Skidmore") on claims based on indemnification, breach of contract and breach of warranty arising out of a contract for the design and construction of the Joseph H. Hirshhorn Museum and Sculpture Garden in Washington, D. C., defendant Skidmore moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint on the grounds that all claims are barred by the applicable statute of limitations and that defendant as an architectural firm cannot be held liable for breach of warranty. The Government, in resisting the motion, has submitted an affidavit and certain evidentiary material; the Court thus treats the motion as one for summary judgment under Rule 56. For the reasons set forth below, defendant's motion is granted in part and denied in part.

The facts alleged in the complaint and contained in the Government's supporting material, which for purposes of this motion are accepted as true, are rather simple. The United States, acting through the General Services Administration ("GSA"), entered into a contract for architectural and engineering services with Skidmore in August 1967 in connection with the construction of the museum. Among other things, the contract required Skidmore to prepare specifications to be included in the contract for the construction of the museum, and also to review and approve architectural and structural shop drawings. In February 1970, the United States entered into a contract for the construction of the museum with Piracci Construction Company ("Piracci").

Pursuant to the construction contract, Piracci was required to prepare a scale model of the museum's "Core No. 1 support from Plaza Level to and including Second Floor framing, complete with ring girders, and one typical axial rib each side; to extent shown on drawings." Piracci submitted this model to GSA in August 1970, and Skidmore reviewed it. The complaint alleges that GSA rejected the model as not acceptable upon Skidmore's representation that it was inaccurate and out of scale. Piracci submitted a second model, which was accepted, in April 1971.

The complaint further alleges that Skidmore, contrary to its contractual obligation, refused to approve shop drawings for the column supports until the second model was approved, despite its knowledge that such drawings were not required by the subcontractor which was fabricating the columns;

and that it persisted in such refusal although it knew the subcontractor would not proceed without such approval and its refusal would delay the fabrication of the form and delay construction of the museum as a whole. As a result, according to the Government, the formwork was not delivered until June 1971, six months behind schedule, causing both the Government and Piracci to incur substantial additional costs.

In addition to the above allegations in the complaint, other facts are set forth in the affidavit of Walter Huber, the Contracting Officer in charge of the GSA-Piracci construction contract.

On November 29, 1970, Piracci notified the GSA that its performance of work under the construction contract had been unreasonably delayed "because of the failure of the government and its architect to furnish [it] with the design information and related calculations required to produce the shop drawings for steel form fabrication for the main support columns and to fabricate a scale model as specified," and that it intended to submit a claim for the increased cost resulting from the delay. Thereafter Piracci submitted the second model which, based upon the architect's approval, was accepted by GSA in April 1971.

On May 12, 1971, Piracci filed a detailed statement for its additional costs claimed to have been incurred as a result of changes ordered and of delays occasioned by the rejection of the first model. On August 25, 1971 the Contracting Officer rejected Piracci's claim, upon the ground that any delays were the result of Piracci's failure to execute the work as required. Piracci appealed this decision to the General Services Board of Contract Appeals ("Board") and also filed an additional claim with the Contracting Officer on February 18, 1972. The Board reversed the decision of the Contracting Officer on May 30, 1974 and found that GSA wrongfully rejected the model and delayed approval of the shop drawings, and that Piracci had thus sustained compensable

additional costs as a result thereof. The Board's opinion contained language critical of Skidmore's basis for recommending to GSA rejection of the first model, but made no finding that Skidmore was negligent since it was not a party to the administrative appeal. In sum, the Board rejected GSA's contention that the first model failed to meet specification requirements.

GSA and Piracci effected a settlement in the amount of $1,043,393 on September 30, 1977, three-and-a-half years after the Board's decision; a stipulation of settlement was filed in the Court of Claims on May 12, 1978,[1] and payment was made by August 3, 1978 to Piracci which executed a general release in favor of the Government. The GSA notified Skidmore on August 12, 1977 that it would assess damages against it based on Skidmore's professional negligence regarding the scale-model issue; on December 19, 1977, GSA informed Skidmore that the damages amounted to $1,043,393, the amount paid to Piracci. Skidmore denied responsibility and notified GSA of its refusal to make any payment. The Government commenced this action on May 29, 1980.

The rather inartistically and repetitively worded complaint states four causes of action. The first alleges that Skidmore's rejection of the first model, its insistence on a submission of a second model, and its refusal to consider the drawings until the model was approved were both unjustified and constituted breach of contract. The second alleges that these actions constituted negligence by Skidmore in the performance of its professional services in breach of Article XVI(B) of the contract, which provides in pertinent part:

> the Professional Services Contractor [Skidmore] shall be and remain liable to the Government for all costs of any kind which were incurred by the Government as a result of [Skidmore's] negligent performance of any of the services furnished under this contract.

1. Since the GSA did not have all the necessary funds to pay the claim, Piracci filed a suit in the Court of Claims to protect its rights.

The third alleges that Skidmore breached its agreement to indemnify the Government as provided by Article XVI(B) of the contract. Finally, the fourth alleges that Skidmore failed to provide all necessary information for the model maker to fabricate a scale model to the degree of accuracy insisted upon by Skidmore and that such failure constituted a breach of its warranties and undertakings under the contract and delayed the construction of the museum. The Government seeks the same damages— $1,043,393 paid to Piracci pursuant to the settlement—on each cause of action.

However variously stated and fragmentized under allegations of negligence, breach of contract and breach of warranty, the Government, under its four separately pleaded causes of action, essentially seeks indemnification of the $1,043,393 paid to Piracci. Upon argument of this motion, it conceded as much. Thus, it urges, because a cause of action for indemnification does not accrue until the indemnitee's liability is determined, this action was timely filed pursuant to the six-year statute of limitations of 28 U.S.C. § 2415(a) for actions by the Government for money damages.

■ However, the first, second, and fourth causes of action are clearly based not on indemnity but on alleged breaches of Skidmore's duties. Thus, they are time-barred because each accrued no later than April 1971, the latest date on which the Government alleges conduct by Skidmore in violation of a contractual duty. It approved the second model on April 2, 1971.

■ A cause of action accrues "when the claim first could have been sued upon." [2] Here, under the Government's allegations, Skidmore allegedly breached the contract no later than April 1971; its cause of action for the alleged breach accrued as of that date. The Government, however, contends that the earliest accrual date is May 30, 1974, when the Board held the Government liable to Piracci. Before that, it argues, it had suffered no damages.[3] However, the fact that until the time of the decision GSA believed that Skidmore and it were justified in rejecting the first model, does not alter the date of accrual of the causes of action based upon alleged breach of the contract.

The Government's position not only overlooks when Skidmore performed the acts that the Government alleges constitute a breach of the contract, it further ignores the framework of 28 U.S.C. § 2415(a), the statute of limitations which governs actions by the Government based on contracts, express or implied. That section provides that a suit is time-barred "unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later." The one-year saving clause has the effect of tolling the statute of limitations during administrative proceedings and is necessary because "[a]n administrative proceeding ordinarily consumes a considerable period of time and . . . the [section] would permit the Government a year after the final adminis-

---

**2.** *United States v. Cardinal*, 452 F.Supp. 542, 547 (D.Vt.1978).

**3.** The general rule is that a cause of action for breach of contract accrues at the breach, even though the precise amount of damages may not be ascertained until later. *E. g., National Hills Shopping Center, Inc. v. Insurance Co. of N. Amer.*, 320 F.Supp. 1146 (S.D.Ga.1970); *Edlux Const. Corp. v. State of New York*, 252 A.D. 373, 300 N.Y.S. 509, 511–12 (3d Dep't 1937), *aff'd*, 277 N.Y. 635, 14 N.E.2d 197 (1938); *Wichita Nat'l Bank v. United States Fidelity & Guaranty Co.*, 147 S.W.2d 295, 297 (Tex.Civ. App.1941); *Taylor v. Puget Sound Power &*

*Light Co.*, 64 Wash.2d 534, 392 P.2d 802, 804 (1964). Although some courts hold that the accrual date is delayed until damages are ascertainable, *e. g., Otis Elevator Co. v. State of New York*, 52 A.D.2d 380, 383 N.Y.S.2d 920, 921 (3d Dep't 1976), the damages in this case were in any case ascertainable shortly after the alleged breach; all the acts upon which damages were predicated had taken place by the time Piracci filed its claim, and prior to the Board's determination. Thus actual money damages were ascertainable shortly after the occurrence of the breach.

trative decision in which to present its case for judicial determination."[4]

To hold that a cause of action for breach of contract does not arise until a final administrative decision fixes liability would read the one-year provision out of the statute; it would convert what, as the legislative history clearly shows, was intended as a one-year tolling provision, into an accrual date, so that the six-year limitation period commenced at that time.

In *United States v. D. H. Dave, Inc.*,[5] the Government sought to collect payment pursuant to an administrative determination that defendant contractors had defaulted and that the United States, as a result, had incurred additional costs in hiring another contractor. The Contracting Officer had determined that defendants were in default as of April 3, 1954; an extended appeal process resulted in an administrative finding of liability on the part of the contractors on June 7, 1973. Suit was commenced on December 12, 1975, one-year-and-a-half after the expiration of the one-year tolling period. The Court held that the cause of action accrued at the time of the breach of the contract,[6] not at the time of the final administrative action, and the suit was thus barred because it was not commenced within one year after the end of the administrative proceedings.

The Government's attempt to demonstrate that the cause of action did not accrue until the decision of the Board is unpersuasive. The two cases on which it relies for the proposition that the cause of action accrued when it suffered actual damages, the date when the Board rendered its decision, are inapposite.

In *United States v. Withrow*,[7] the Government sued to recover overpayments made to a provider of services under the Medicare program. The Court held that the cause of action accrued when the administrative audit committee determined the respective liability of the parties, not when the alleged overpayments were made. However, the regulatory scheme governing the parties' relationship provided for reimbursement based on an accounting done at the end of a reporting period; thus, the parties "clearly contemplated that only after the audit by the fiscal intermediaries could either party be liable to the other.... [Therefore, n]o duty was owed to the United States until the rights and liabilities of the parties were determined in the audit."[8] The contract at issue in this case is not governed by such a regulatory framework; rather, Skidmore owed a duty under the contract and allegedly breached that duty well before the final administrative decision in 1974.[9] In fact, the administra-

---

4. S.Rep.No. 1328, 89th Cong., 2d Sess. 3, *reprinted in* [1966] U.S.Code Cong. & Ad.News, pp. 2502, 2504.

5. 424 F.Supp. 424 (D.Md.1976).

6. Section 2415(g) provides that all causes of action accruing prior to the enactment of the statute are deemed to accrue on July 18, 1966, the date of the statute's enactment. Thus, in *Dave*, although the breach occurred on April 3, 1954, it is deemed to accrue on July 18, 1966; in either case, the six-year limitations period had expired.

   Even though the administrative proceedings here involved a different contract and contractor from the one now at issue, § 2415(a) focuses on the date of the breach of duty; the statute provides for a tolling period for commencing suit in the event that required administrative proceedings exceed the six-year period. The final administrative decision (the point at which the Government in the instant case contends it first suffered damages) does not

create the cause of action. This is in distinction to the accrual date for actions *against* the Government under 28 U.S.C. § 2401, which is the time of the administrative decision. As the Supreme Court has indicated, however, the statutory schemes of § 2401 and § 2415 are not parallel. *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 519–22, 87 S.Ct. 1177, 1186–1187, 18 L.Ed.2d 256 (1967).

7. 593 F.2d 802 (7th Cir. 1979).

8. *Id.* at 804–05.

9. The breach of duty gives rise to the cause of action. As *Withrow* demonstrates, a statute may define when that duty is created and, hence, when it might be breached. *See also Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 65–66, 73 S.Ct. 580, 583–584, 97 L.Ed. 821 (1953) (cause of action under Walsh-Healey Act, concerning labor standards, accrues not when administrative decision is made

tive proceeding was instituted and resulted from Skidmore's acts and conduct in rejecting Piracci's first model, all of which, as well as the claimed damages, occurred prior to April 1971. Significantly, on May 12, 1971, Piracci had filed with GSA a detailed statement for its additional costs based upon the claimed delays.

*Terteling v. United States,*[10] also relied upon by the Government, also does not support its position on the date of accrual. There, a contractor sought to recover from the Government its expenses incurred in successfully defending law suits brought against it by the owners of land which the contractor had used as gravel-pit sites in the performance of a government construction contract. The contractor alleged that the government had breached the contract in failing to provide gravel-pit sites free of charge and was thus liable for all the litigation expenses. The court held that the cause of action did not accrue at the earliest until the law suits by the contractors were commenced in state courts and that it was only when the litigation ended, which was when the Supreme Court of the United States denied certiorari, could the total amount of legal expenses be determined. The Court of Claims held that to have filed suit earlier would have resulted in splitting causes of action and in repeated litigation involving the same facts.

The instant case is readily distinguishable. While in *Terteling,* under the court's ruling, the contractor's claim for its legal expenses resulting from the government's breach of contract did not accrue until the contractor was cast in liability for legal expenses which were not ascertainable until the end of the litigation, here the damages claimed under the first, second and fourth causes of action were ascertainable at or shortly after the alleged breach—that is, no later than April 2, 1971—and long before the Board's determination in May 1974.[11] Even accepting the Government's conten-

tion that it did not "discover" Skidmore's alleged breach until the rendition of the Board's decision, there was no obstacle at that time to its commencing an action based upon the claimed breach [12]—particularly so, since the Board's reversal of the Contracting Officer's decision was based in part upon Skidmore's actions. Thus, the first, second, and fourth claims are barred by the statute of limitations.

The third cause of action, based on indemnification, presents different considerations. In this claim, the Government seeks reimbursement of the money it paid to Piracci pursuant to the Board's ruling of May 30, 1974 that GSA's requirement that Piracci submit a second model and its refusal to consider the shop drawings until the second model was approved were unjustified and created an unreasonable delay compensable under the Suspension of Work clause in the Piracci-GSA contract. The Government contends that this payment constitutes "costs . . . incurred . . . as a result of [Skidmore's] negligent performance of any of the services furnished under [the Skidmore-GSA] contract." Skidmore urges that, no finding of negligence on its part ever having been made, the Government's payment to Piracci is not a cost incurred as a result of Skidmore's negligence and thus does not give rise to an indemnity claim. It argues that, in order to find for the Government on this claim, the Court would have to make an initial finding of negligence on the part of Skidmore, and that the three-year statute of limitations of 28 U.S.C. § 2415(b), governing negligence actions, has long ago expired.

Skidmore's argument overlooks the distinction between a claim based on an indemnity agreement, as the Government makes in this third cause of action, and one based directly on the allegedly negligent conduct. A cause of action for indemnity

---

but "when there is a breach of duty owed the plaintiff. It is that breach of duty, not its discovery, that normally is controlling.")

**10.** 334 F.2d 250 (Ct.Cl.1964).

**11.** See n. 3 *supra.*

**12.** *Cf. United States v. D. H. Dave, Inc.,* 424 F.Supp. 424, 428 (D.Md.1976).

does not arise "until the party seeking indemnification suffers a loss." [13] This occurs when the indemnitee's liability is fixed by a judgment against it or payment by it.[14] The government has already been cast in liability to Piracci and made payment. Whether Skidmore's "negligent performance of any of [its] services," as specified in Article XVI(B) of the contract, resulted in the government's liability to Piracci so that it is entitled to recover from Skidmore under that provision of the contract is an issue to be determined upon the trial.

The Government's third cause of action, based on the indemnity provision in the contract, is thus timely made: the complaint, filed on May 29, 1980, is within six years of the earliest possible accrual date. Defendant's motion to dismiss it is denied. The first, second, and fourth causes of action, on the other hand, are dismissed as barred by the statute of limitations.[15]

So ordered.

**13.** *United States v. Farr & Co.*, 342 F.2d 383, 387 (2d Cir. 1965).

**14.** *United New York Sandy Hook Pilots Ass'n v. Rodermond Indus., Inc.*, 394 F.2d 65, 75 (2d Cir. 1968); *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir. 1966), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); *United States v. Farr & Co.*, 342 F.2d 383, 387 (2d Cir. 1965); *Chicago, Rock Island & Pac. R.R. v. United States*, 220 F.2d 939, 942 (7th Cir. 1955); *Federal Reserve Bank of Atlanta v. Atlanta Trust Co.*, 91 F.2d 283, 286–87 (5th Cir. 1937); *Hidick v. Orion Shipping & Trading Co.*, 157 F.Supp. 477, 487–89 (S.D.N.Y.1957), *aff'd*, 278 F.2d 114 (2d Cir.), *cert. denied*, 364 U.S. 830, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960); *Celeste v. Pru-*

*dential-Grace Lines, Inc.*, 35 N.Y.2d 60, 358 N.Y.S.2d 729, 315 N.E.2d 782 (1974). With respect to the indemnity claim, it is unnecessary to choose among the four possible dates of accrual offered by the government, which include the date of the Board decision and the date of payment on August 3, 1978. Inasmuch as the claim could not have accrued prior to the Board decision on May 30, 1974, this action, commenced on May 29, 1980, comes within the six-year period of 28 U.S.C. § 2415(a).

**15.** It is thus unnecessary to consider Skidmore's alternative ground for seeking dismissal of the fourth cause of action, that architects, as professionals, do not warrant the quality of their services and thus cannot be subject to liability on a breach-of-warranty theory.