UNITED STATES of America, Plaintiff,

v.

GENERAL ELECTRONICS,
INC., Defendant.

Civ. A. No. 82–1509.

United States District Court,
D. New Jersey.

Feb. 18, 1983.

W. Hunt Dumont, U.S. Atty., Newark, N.J. by David V. Seaman, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Kleinberg, Moroney, Masterson & Schachter, Millburn, N.J., and James V. Joy, Jr., New York City, for defendant.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, United States of America (the "government"), sues defendant, General Electronics, Inc. ("General") to enforce the provisions of a guaranty agreement. Jurisdiction is asserted under 28 U.S.C. § 1345. The case is presently before the court on cross-motions for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be entered on the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, showing there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Hollinger v. Wagner Min. Equipment Co.,* 667 F.2d 402 (3d Cir.1981). By virtue of the allegations in the pleadings, which are not denied, and by virtue of extensive admissions, there are no disputed facts material to the resolution of this case.

Fairfield Scientific Corporation ("Fairfield") submitted a bid for the award of a contract to provide the Navy with impulse cartridges. On October 10, 1972, prior to the award of the contract to Fairfield, General entered into a written guaranty agreement with the Navy. Under Paragraph 1 of the agreement, General "absolutely guarantees the full, complete and faithful performance" by Fairfield of its procurement contract. Under Paragraph 4, General's guaranty became "absolute" upon termination for default under the terms of the contract.

Paragraph 7 of the contract provided:
*Extent of guarantor's liability.* In the event the Government terminates such contracts for default and awards the uncompleted portion of such contract to another source at a fair and reasonable price, the Guarantor shall be liable for any excess costs incurred by the Government as a result of such reprocurement. In addition, the Guarantor shall be liable for all costs and expenses paid or incurred by the Government in enforcing this Guaranty. The contracting officer representing the Government in connection with such contract shall determine the total cost and expenses, if any, incurred by the Government. The contracting officer's decision shall be subject to appeal by the Guarantor under the "Disputes" Clause set forth in Section VII of the Armed Services Procurement Regulation, which "Disputes" Clause is incorporated herein by reference.

The Disputes Clause contained in Section 7 of the Armed Services Procurement Regulation provided in part that:
The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt [of the

contracting officer's decision] the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. 32 CFR § 7.103–12.

On October 27, 1972, the government awarded a contract to Fairfield for the manufacture and delivery of a quantity of impulse cartridges. This procurement contract was covered by General's guaranty agreement. Fairfield did not deliver the impulse cartridges as scheduled, and on November 5, 1973, the Navy contractor in charge of the contract terminated it for failure to make timely delivery.

On January 25, 1974, a contract was awarded to a new contractor to supply the impulse cartridges.

By letter dated March 15, 1976, the contracting officer rendered a final decision assessing against Fairfield excess costs of reprocurement in the amount of $50,460 plus interest.

On March 31, 1976, acting pursuant to a Disputes Clause identical to the one contained in the General guaranty, Fairfield timely appealed the final decision of the contracting officer to the Armed Services Board of Contract Appeals. General, however, did not pursue its remedies under the standard Disputes Clause incorporated in its guaranty agreement.

On October 28, 1977, the Board rendered its final decision. After making extensive findings of fact, the Board affirmed the government's termination of Fairfield's contract for default. It also ruled that the contracting officer miscalculated the amount of excess costs incurred by the government and adjusted the amount of the excess cost to $46,946.60. Additionally, the Board sustained the contracting officer's computation and award of interest. By letter dated March 2, 1978, the government demanded payment from both Fairfield and General.

On April 7, 1978, Fairfield filed a suit in the United States Court of Claims seeking review of the Board's decision pursuant to 41 U.S.C. §§ 321 and 322. General was not a party to the Court of Claims proceeding. The government counterclaimed for $46,946.60, the amount of excess cost found by the Board to be due from Fairfield.

On December 12, 1979, the Court of Claims issued its initial decision in the action upholding the Board's excess cost determination. The Court, however, remanded the case to the Board for the taking of additional evidence. *Fairfield Scientific Corp. v. U.S.*, 611 F.2d 854, 222 Ct.Cl. 167 (1979).

On June 3, 1980, on remand, the Board dismissed Fairfield's action for failure to prosecute. On July 30, 1980, the Board denied Fairfield's motion for reconsideration of the dismissal.

On July 1, 1981, the Court of Claims issued its final decision affirming the Board's dismissal of the action. The Court. granted judgment to the government on its counterclaim with interest. *Fairfield Scientific Corp. v. United States*, 655 F.2d 1062 (Ct.Cl.1981). Fairfield did not seek further review of the Court of Claims decision. On November 16, 1981, the government registered the Court of Claims judgment against Fairfield in the District of New Jersey pursuant to 28 U.S.C. § 2508.

Fairfield had ceased its business operations in 1976.

Neither Fairfield nor General paid the government any part of the judgment rendered against it. On May 13, 1982, the government commenced this action against General on its guaranty seeking payment of the $46,946.60 in excess costs found to be owed by Fairfield. The sole issue is whether the government's right against General under the guaranty agreement is time barred by 28 U.S.C. § 2415(a). It is clear on the basis of the undisputed facts that unless its claim is time barred, the government is entitled to summary judgment in its favor on its claim under the guaranty.

28 U.S.C. § 2415(a) provides in relevant part:

> ... every action for money damages brought by the United States or an officer or agency thereof which is founded

upon any contract express or implied in law or in fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after the final decisions have been rendered in applicable administrative proceedings required by contract or law, whichever is later. . . .

General asserts the government's action is barred by both the six years and the one-year provisions of § 2415(a). It contends that the government's right of action accrued no later than March 15, 1976, when the contracting officer initially determined the amount of excess costs. Suit was instituted on May 13, 1982, two months beyond the six-year period. General also contends that the final decision in the administrative proceeding was rendered on October 28, 1977, when the Board issued its decision. The filing of the complaint did not occur until long after a year had expired.

The government, on the other hand, contends that its right of action accrued either on October 25, 1977, when the Board initially ruled, or on July 1, 1981, when the Court of Claims issued its final decision. The complaint was filed within six years of either of those two dates. The government also contends that the one-year period began to run on July 1, 1981, when the Court of Claims finally ruled, that is to say, such ruling constituted a final decision rendered in the applicable administrative proceedings.

Both parties find support for their respective positions in the cases.

I conclude that General correctly contends that for 2415(a) purposes the government's cause of action accrued no later than March 15, 1976, when the contracting officer determined the amount of excess costs. The government finds support for a contrary position in *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).

In that case, the Supreme Court construed 28 U.S.C. Section 2401(a) which governs suits by contractors against the United States.

Section 2401(a) contains the six years after accrual of right of action limitation, but it does not contain the one year after final administrative decision limitation found in Section 2415(a). The Court there held the contractor's claim "first accrued at the time of the final decision of the Armed Services Board of Contract Appeals, that is, upon the completion of the administrative proceedings contemplated and required by the provisions of the contract." at 511, 87 S.Ct. at 1182.

The government argued in that case that subsequently enacted Section 2415 demonstrated that Congress did not intend that the accrual of the claim be the same date as the date of completion of the administrative proceedings. Section 2415 has two limitation periods, one running from the date of the accrual of the right of action, and the other running from the date of the final administrative decisions. It would have been anomalous for two different time periods to run from the same date.

The Supreme Court recognized the strength of the government's argument based on this observation, but concluded that: ". . . we are not convinced that Congress intended to issue any determinative construction of Section 2401 in formulating and passing Section 2415." at 520, 87 S.Ct. at 1187. One can infer from that language that the construction which the Court placed on Section 2401 did not necessarily govern the construction of Section 2415(a).

■ I think the more likely intent of Congress, insofar as Section 2415(a) is concerned, is that the accrual of the right of action is a different date from the date of the final administrative decisions. The date of the accrual of the right of action in this case was no later than March 15, 1976, when, after Fairfield's breach, the contracting officer determined the amount of excess costs.

I follow the reasoning of Judge Kaufman in *United States v. D.H. Dave, Inc.,* 424 F.Supp. 424 (D.Md.1976). I do not accept the reasoning of *United States v. Birmingham Fire Insurance Co. of Pa.,* 370 F.Supp. 501 (W.D.Pa.1974). It follows that the

government has failed to institute suit within the six-year period specified in Section 2415(a), and it's necessary to inquire whether it instituted suit within the one-year period specified in the same section.

The government contends that the final decision in the administrative proceedings was not October 28, 1977, when the Board determined that the excess cost was $46,-946.60. Rather, the government contends, the date of the final decision was July 1, 1981, the date of the final decision of the Court of Claims, which came after Fairfield appealed the Board's determination, after the remand by the Court of Claims to the Board, and after the Board's dismissal of Fairfield's action on the remand. The government position has been rejected in *United States v. Dawkins,* 629 F.2d 972 (4th Cir.1980). There, the Court stated, "We do not agree with the government's contention that the final decision in the applicable administrative proceedings in this case included the final judgment of the Court of Claims." at 975.

I am inclined, however, to disagree with the Fourth Circuit conclusion. It produces just such a foolish result as the Supreme Court avoided in *Crown Coat* by giving an expansive meaning to the phrase "accrual of a right of action" for § 2401 purposes.

■ A general purpose of all statutes of limitations is to prevent a claimant from sleeping on his rights and failing to sue an unsuspecting defendant until memories have become dim and evidence lost. Another purpose is to insure a potential defendant repose after a reasonable period of time has elapsed.

■ In the present case Fairfield, whose contract General guaranteed, and the government actively litigated their claims after the Board had rendered its decision. There was no sleeping on rights, and no one was lulled into false security.

As in *Crown Coat,* the actual amount of the government's claim against General would not be finally determined until completion of all proceedings. Were General's position correct, it would have been neces-

sary for the government to have instituted suit against General before it knew with certainty the amount for which General could be held liable.

Referring to an analogous situation in *Crown Coat,* the Court stated: "The government [which in that case was the defendant pleading the statute of limitations under § 2401] suggests that the contractor may easily avoid such untoward results by the timely filing of a protective suit which would remain inactive pending the conclusion of administrative proceedings. But the contractor is not legally entitled to ask the courts to adjudicate his claims as an original matter. Nor can he sensibly ask the courts to review a decision which has not yet been made. He cannot, with honesty, make the necessary allegations to support an action for review until the administrative process is completed and the agency decision known. Since it would remain quiescent until the administrative decision is rendered, the protective suit would be a sheer formality in any event—a procedural trap for the unwary and an additional complication for those who manage the dockets of the courts." 386 U.S. at 515, 87 S.Ct. at 1184.

Similarly, to require the government to file a protective suit to avoid the running of the statute of limitations during the period the Court of Claims reviews, possibly remands, and possibly reviews again an administrative determination would be a procedural trap for the unwary and an additional complication for those who manage the dockets of the courts. Interpreting the phrase "final decision in applicable administrative proceedings" in accordance with the purposes of Section 2415(a) leads to the conclusion that it was intended to include the final determination of the Court of Claims on its review of the decision of the Board.

I conclude the government instituted its action within the one year time limit provided in § 2415(a). There is no other barrier to its recovery, and, therefore, summary judgment will be entered in favor of the government and against General.