UNITED STATES of America, Plaintiff,

v.

**LINCOLN ENGINEERS, INC.,
Defendant.**

Civ. A. No. 830104 S.

United States District Court,
Rhode Island.

May 10, 1984.

Lincoln C. Almond, U.S. Atty., Everett C. Sammartino, Michael P. Iannotti, Asst. U.S. Attys., Providence, R.I., for plaintiff.

Hinckley & Allen, Howard E. Walker, Michael J. Sarli, Higgins, Cavanagh & Cooney, Gerald C. DeMaria, Providence, R.I., for defendant.

## OPINION AND ORDER

SELYA, District Judge.

The United States brought this contract action to recapture unliquidated progress payments and inventory recovery costs from the defendant Lincoln Engineers, Inc. (Lincoln). Suit was filed on February 4, 1983. Lincoln answered, then moved for judgment on the pleadings, Fed.R.Civ.P. 12(c). In July of 1983, while that motion was pending, the First Circuit rendered its decision in *United States v. Hughes House Nursing Home,* 710 F.2d 891 (1st Cir.1983). This court promptly denied Lincoln's motion without prejudice, subject to renewal as a motion for summary judgment under Fed.R.Civ.P. 56, and instructed the parties to develop the factual record to address questions arguably raised by *Hughes House.*

Over the succeeding months, that directive has been honored. An agreed statement of facts has been filed, along with cross motions for summary judgment. At a hearing held on April 18, 1984, the parties agreed to submit the cause on the record (in lieu of trial) for decision by the court on the merits. In addition to the pleadings, the statement of facts, and the cross motions, the record comprises, by agreement, all of the material proffered in connection with the motions for *brevis* disposition, including the relevant contract clauses and correspondence between the parties, as well as the decision of the Armed Services Board of Contract Appeals (Board) anent Lincoln's administrative appeal. In that appeal, the Board on July 11, 1978 upheld the government's termination of the contract on the ground of default and sustained the government's counterclaim for recovery against Lincoln.

The matter has been briefed, and oral arguments have been waived. This rescript, therefore, constitutes the court's findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

### I.

On April 21, 1972, the Department of the Army awarded Lincoln a fixed price contract to manufacture one hundred fifty-five missile mounting kits for delivery during the period April, 1973 through May, 1974. By modification thereto, the government, on October 30, 1973, exercised its option to procure from Lincoln an additional thirty-six mounting kits at roughly the same price. The stipulated consideration for these items, in the aggregate, exceeded half a million dollars.

Three clauses of the contract are at issue here.[1] The default clause, which allowed

---

1. The clauses were set forth in the Armed Services Procurement Regulations which were pub- lished in the Code of Federal Regulations.

the United States to terminate the contract by written notice of default, required Lincoln, upon the government's exercise of this prerogative, to transfer to the Army all inventory and materials produced or acquired in the course of performance of the contract. The progress payments clause entitled Lincoln to periodic step payments, but only up to eighty percent of costs reasonably incurred under the contract as determined in accordance with "sound and generally accepted accounting principles and practices." If at any time unliquidated progress payments exceeded a specific amount, the government was entitled to a refund on demand. And, in the event of termination for default, the government had a right to be paid all unliquidated progress payments, likewise on demand. Finally, the disputes clause required that controversies arising under the contract, and not consensually resolved, be decided by a contracting officer. There was reserved a further right of appeal to, in this case, the Board.

Although the Army granted several extensions of time for performance, the defendant was unable to meet the contract delivery schedules. By letter dated April 6, 1976, the government demanded that Lincoln show cause why the contract should not be terminated pursuant to the default clause. No meaningful response ensued. In the absence of a satisfactory showing, the Army, by letter dated May 12, 1976, invoked the default clause and terminated the contract due to Lincoln's failure to effect timely delivery. On or about June 1, 1976, the defendant protested the government's action to the Board.

While the appeal to the Board was pending, the United States, under date of June 10, 1976, ordered that Lincoln relinquish to it all inventory attributable to the contract and purchased by use of the progress payments. Lincoln complied within the month. Therefore, by the end of June, 1976, the government had in its possession all of the information necessary to calculate the amount forthcoming as a consequence of the termination. But, true to the most exasperating of bureaucratic traditions, the Army proceeded at a leisurely pace. Not until March 30, 1977 did the government arrive at the conclusion that it was owed $47,127.21 in unliquidated progress payments and $3,699.00 in inventory recovery costs. And, on June 13, 1977, the government filed its counterclaim for those amounts with the Board. The Board, as noted previously, found in favor of the Army both on Lincoln's appeal and on the counterclaim.

The parties concur that the controlling statute of limitations is that set out in 28 U.S.C. § 2415(a). There is, likewise, general agreement that the decision of the Board is a "final decision ... rendered in applicable administrative proceedings required by contract or by law" for purposes of the aforementioned statute. *Id.* And, both parties are bound by the Board's findings of fact. The sole issue before the court relates to the government's claim for recompense. Lincoln does not now protest the Board's determination that the Army properly abrogated the contract; nor does it challenge the government's claim that the disputes clause of the contract precludes judicial review of the Board's decision beyond the substantial evidence test. *See, e.g., Silverman Brothers v. United States,* 324 F.2d 287, 288–90 (1st Cir.1963). Indeed, Lincoln foreclosed the possibility of *de novo* review of the Board's decision by agreeing to be bound by the Board's findings of fact.

The plaintiff commenced this action more than six years after the government terminated the contract for default; more than six years after the government demanded disgorgement of the inventory; and more than one year—indeed more than four years—after the Board rendered its final decision. The defendant urges that the suit is, therefore, stale and time barred. The government, while forced to concede that the action is a trifle moldy, asseverates that it is sufficiently fresh to withstand a limitations defense.

## II.

Lincoln's resistance rests on one simple contention: the government's action is

barred by 28 U.S.C. § 2415(a). That statute, in relevant part, requires the government to sue on a contract claim "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later." *Id.*

Lincoln urges that the government's right of action accrued for purposes of § 2415(a) on May 12, 1976, the date the government terminated the contract. Even if a more belated accrual date is appropriate, Lincoln argues, the government's cause of action surely accrued no later than the time at which the amount of its claim became fairly ascertainable, *i.e.,* on or before June 30, 1976—also more than six years prior to the date suit was brought. Finally, Lincoln maintains that the second clause of the statute does not save the Army's bacon because the one-year savings period following the date of the Board's decision ended on July 11, 1979. Consequently, in Lincoln's view, the government's suit is time barred.

The United States claims, however, that its right of action did not arise until the administrative proceedings were completed; and it, therefore, had six years from that date—until July 11, 1984—to file this action. This rather inventive reading of the statute relies entirely on *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), and *United States v. Birmingham Fire Insurance Co.,* 370 F.Supp. 501 (W.D.Pa.1974). Neither decision suffices to sustain the government's argument.

The question before the Court in *Crown Coat* was when a right of action "first accrues" to a contractor under 28 U.S.C. § 2401(a), the statute of limitations applicable to civil actions filed against the United States. At that time, § 2401(a) provided, in pertinent part, that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The statute made no allowance for the length of administrative proceed-

ings, although the standard disputes clause (then, as now) mandated resort to administrative channels as a prerequisite to litigation. Recognizing that a literal reading of that statute could have served to bar entirely the contractor's right to sue the government where administrative proceedings, for whatever reason, continued beyond the six-year limit, the Court held that the contractor's right of action did not accrue until the final administrative decision was filed. *Crown Coat,* 386 U.S. at 522, 87 S.Ct. at 1187.

The holding in *Crown Coat* effectively averted an inequitable construction of § 2401(a). But, the one-year clause in § 2415(a) makes a similar interpretation of the statute at bar both superfluous and inconsistent with the plain language of the proviso. Specifically distinguishing the language of § 2415(a), the *Crown Coat* Court noted that Congress there had "made due allowance" for the potential time bar which lengthy administrative proceedings could create "by allowing the Government the one-year grace period." 386 U.S. at 521, 87 S.Ct. at 1187. The *Crown Coat* cannot comfortably be worn by the plaintiff here, nor can it be tailored to fit the government's claim without damaging the statutory fabric which Congress, in enacting § 2415(a), has so carefully woven. And, because *Crown Coat* is not controlling vis-a-vis the case at bar, *Birmingham Fire Insurance, supra,* which applied the *Crown Coat* interpretation of § 2401(a) to § 2415(a), is not, in this court's view, good law.

Neither does the recent decision of the First Circuit in *United States v. Hughes House Nursing Home, supra,* support the plaintiff's position. There, the government had sued Hughes House to recover Medicare overpayments made by the fiscal intermediary (Blue Cross). Unlike in this case, the rights and obligations of the parties in *Hughes House* were determined by an intricate mosaic of federal rules and regulations, not by contract. Reversing the district court's holding that the government's action to recover the overpayments

was time barred by 28 U.S.C. § 2415(a), the appeals court held that the cause of action in favor of the United States did not accrue until "under its regulations, it became entitled to demand its money back from the Home." 710 F.2d at 894. The government simply had no right to collect the overpayments before the retroactive final adjustment fixed liability. *Id.* at 894–95.

The *Hughes House* court went on to explain an exception to its final adjustment conclusion. Noting that the regulation governing recovery of a "current financing payment" expressly made such item "due and payable" if outstanding as of a certain date, the court found that the government's right to demand repayment of such an amount accrued as of that date. *Id.* at 895. And, because it accrued more than six years prior to the commencement of suit, the claim for that amount was barred. *Id.* The language of the default clause and the progress payments clause in the contract underlying the instant action was, similarly, sufficiently definite to give full flower to the government's right of recoupment no later than the end of June, 1976.

Well-reasoned opinions from at least two other federal district courts further bolster Lincoln's contention that the government's complaint against it is time barred. In *United States v. D.H. Dave, Inc.*, 424 F.Supp. 424 (D.Md.1976), the plaintiff advanced the identical thesis which it parrots here. In *D.H. Dave*, the government, which had terminated for default its contract with the defendants, argued that suit was not foreclosed by 28 U.S.C. § 2415(a) because its right of action accrued on the date of the final administrative decision. The litigation had been commenced more than nine years after the earliest date the government's right to demand repayment had arguably crystallized [2] and more than two years after the final administrative proceedings concluded. *Id.* at 426. After reviewing *Crown Coat, Birmingham Fire*

*Insurance,* and the legislative history of § 2415(a), the court concluded that the statute of limitations should be construed according to its plain language. Therefore, it held that the government's claim did not accrue when the administrative proceedings were completed and that the action was barred because it was filed beyond both the original limitations period and the one-year savings period following the final administrative determination. *Id.* at 428.

The legislative history of § 2415(a) is indeed instructive here. The one-year provision,

> which has the effect of tolling the running of the statute of limitations during mandatory administrative proceedings, is necessary because of the great number and variety of such proceedings made possible by current statutes. An administrative proceeding ordinarily consumes a considerable period of time and, as has been noted, *the bill would permit the Government a year after the final administrative decision in which to present its case for judicial determination.* An example of such an administrative proceeding are those which involve appeals under the "disputes" clause of Government contracts.

S.Rep. No. 1328, 89th Cong., 2d Sess. 3, *reprinted in* 1966 U.S.Code Cong. & Ad. News 2502, 2504. (Emphasis added). And here, as in *D.H. Dave,* "[w]hen the final administrative decision was filed ..., there was seemingly no reason why the Government required any lengthy period of time to prepare to sue and to file suit for enforcement." *D.H. Dave,* 424 F.Supp. at 428.

The court in *United States v. Skidmore, Owings & Merrill,* 505 F.Supp. 1101 (S.D. N.Y.1981), reached the same conclusion. Observing that "[a] cause of action accrues 'when the claim first could have been sued upon,'" *id.* at 1104 (quoting *United States*

---

**2.** The earliest legally effective date upon which accrual could have occurred in *D.H. Dave* was the date of the enactment of 28 U.S.C. § 2415(a). *See* 28 U.S.C. § 2415(g) ("Any right of action subject to the provisions of this section

which accrued prior to the date of enactment of this Act shall, for purposes of this section, be deemed to have accrued on the date of enactment of this Act."); *D.H. Dave,* 424 F.Supp. at 426.

*v. Cardinal*, 452 F.Supp. 542, 547 (D.Vt. 1978)), Judge Weinfeld cited the general rule that "a cause of action for breach of contract accrues at the breach, even though the precise amount of damages may not be ascertained until later." *Skidmore*, 505 F.Supp. at 1104 n. 3. Focusing on the language of § 2415(a), the court reasoned:

> To hold that a cause of action for breach of contract does not arise until a final administrative decision fixes liability would read the one-year provision out of the statute; it would convert what, as the legislative history clearly shows, was intended as a one-year tolling provision, into an accrual date, so that the six-year limitation period commenced at that time.

*Id.* at 1105. *See also United States v. General Electronics*, 556 F.Supp. 801, 804–05 (D.N.J.1983).[3]

The contract between the Army and Lincoln clearly contemplated that, when the government terminated the agreement for default, it had an immediate right to be enfeoffed of all unliquidated progress payments and the transfer of all inventory and materials. *Cf. United States v. Alessi*, 599 F.2d 513, 515 (2d Cir.1979); *Jonklaas v. Silverman*, 117 R.I. 691, 695, 370 A.2d 1277, 1280 (1977); *City of New Bedford v. Lloyd Investment Associates*, 363 Mass. 112, 119, 292 N.E.2d 688, 692 (1973); R.I. Gen.Laws § 6A–2–725(2). Those events were susceptible to implementation, under the contract, "on demand." That was when the government's cause of action against Lincoln accrued. Therefore, because suit was not filed within the six-year span following accrual of the claim, and since that period ended later than one year after the completion of administrative proceedings, the government's suit is time barred by the terms of 28 U.S.C. § 2415(a). After all, a "statute's plain language is the primary indicator of its meaning." *Massachusetts Financial Services v. Securities Investor Protection Corp.*, 545 F.2d 754, 756 (1st Cir.1976), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). And, in the case of § 2415(a), the wording of the statute is blunt, direct, and susceptible only to a single reasonable interpretation.

The reading of § 2415(a) urged by the government is factitious, at best. To adopt that interpretation would require this court to invade the precincts of the legislature and effectively to redraft the statute under the guise of judicial construction. That road should be shunned, as it leads only to the dismemberment of our tripartite form of government. As this court recently observed:

> [W]here the words of a law ... have plain and obvious meaning, all construction, in hostility with such meaning, is excluded. This is a maxim of law, and a dictate of common sense; for were a different rule to be admitted, no man, however cautious and intelligent, could safely estimate the extent of his engagements or rest upon his own understanding of law until a judicial construction ... had been obtained.

*Fischer v. McGowan*, 585 F.Supp. 978, 986 (D.R.I.1984) (quoting *Green v. Biddle*, 21 U.S. (8 Wheat.) 1, 89–90, 5 L.Ed. 547 (1823)).

### III.

The government's languor in prosecuting its claim against Lincoln had, by the time of the belated institution of this action, fatally infected its rights. Septicopyemia had set in.

The plaintiff's complaint is, accordingly, dismissed with prejudice. The clerk is di-

---

**3.** *Cf. Levin v. Berley*, 728 F.2d 551, 554 (1st Cir.1984), wherein Chief Judge Campbell, writing for a unanimous panel, wrote that, although "(t)he total extent of [plaintiff's] damages was, to be sure, uncertain prior to final judicial resolution" of the underlying dispute, "(t)his uncertainty did not, however, delay accrual of [plaintiff's] cause of action." Quoting the Supreme Judicial Court of Massachusetts, the First Circuit noted that " '[i]f knowledge of the extent of an injury were to control the accrual of a cause of action, the fixed time period of statutes of limitations effectively would be destroyed.' " *Levin*, at 554 (quoting *Olsen v. Bell Telephone Laboratories*, 388 Mass. 171, 175, 445 N.E.2d 609, 612 (1983)).

rected to enter judgment for the defendant for costs.

*It is so ordered.*